## JEROME KAUFFMAN V. THE STATE.

### No. 4056. Decided March 11, 1908.

#### 1.—Theft—Separate Property—Husband and Wife—Information.

Where upon trial for the theft of a diamond ring, the ownership was laid in Mrs. B., a married woman, and the evidence showed that both husband and wife occupied the room from which the ring was taken which the wife had placed in her husband's collar box; that the ring in question was the separate property of Mrs B., having been owned by her before her marriage; defendant's contention that the ring was under the exclusive control of the husband was untenable, and the ownership was properly laid in the wife. Distinguishing Coombes v. State, 17 Texas Crim. App., 258; Miles v. State, 51 Texas Crim. Rep., 587; 103 S. W. Rep., 854.

#### 2.—Same—Letter—Charge of Court—Singling Out Testimony.

Where upon trial for theft, a certain letter purporting to have been written by the defendant to prosecutrix, in which he stated that he took the alleged ring, etc., and about which letter there was some conflict of testimony as to whether defendant was its author, etc., the court correctly refused a requested charge singling out the isolated fact as to whether the defendant wrote said letter and intended the same for the prosecutrix, and to acquit him in the event he did not do so. Following Gatlin v. State, 40 Texas Crim. Rep., 116; 49 S. W. Rep., 87.

Appeal from the County Court of Taylor. Tried below before the Hon. T. A. Bledsoe.

Appeal from a conviction of theft under the value of $50; penalty six months confinement in the county jail.

The opinion states the case.

*W. D. Scarborough,* for appellant.—In a prosecution for theft, the possession of the property stolen must be alleged to be in the party from whose custody the property was actually taken. Bailey v. State, 18 Texas Crim. App., 426; Frazier v. State, 18 Texas Crim. App., 434; Garner v. State, 36 Texas, 693; Tankersly v. State, 51 Texas Crim. Rep., 124; 101 S. W. Rep., 997; Garcia v. State, 26 Texas, 209; Ledbetter v. State, 35 Texas Crim. Rep., 195; 29 S. W. Rep., 1084; Littleton v. State, 20 Texas Crim. App., 168; Miles v. State, 51 Texas Crim. Rep., 587; 103 S. W. Rep., 854; Sayles Civil articles 2968 and 4654. On question of refused charge, Gatlin v. State, 40 Texas Crim. Rep., 116; 49 S. W. Rep., 87; Brown v. State, 43 S. W. Rep., 986.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Taylor County at the August term of 1907, for the theft of a diamond ring, of the value of $40, same being the property of Mrs. J. B. Bowie, alleged to have been taken from her without her consent. The case was tried in the county court of the aforesaid county, and resulted in a conviction, appellant's punishment being assessed at six months confinement in the county jail.

It is contended that the conviction should be set aside for the reason that the ownership of the ring in question was wrongly laid in Mrs. Bowie, and that the ownership of the property and possession thereof should have been charged to be in her husband. The facts show beyond dispute that the ring in question was the separate property of Mrs. Bowie, having been owned by her before her marriage. At the date of the taking she and her husband occupied jointly a room at the residence of appellant's mother, Mrs. D. S. Kauffman. Some days before she missed the ring Mrs. Bowie had placed it in her husband's collar box. She was unable to locate the precise time that it was taken, but there was, as stated in the testimony, an interval of some five days between the time when she put the ring away and the date when she discovered its loss. Appellant's contention is that during the marital relation the wife's separate property is under the sole management of the husband as provided in the Revised Statutes, articles 2967 and 2968. Further, that the evidence showing that the ring having been placed in her husband's collar box, that this fact made him in a sense the sole possessor of it. We do not think there is any merit in appellant's contention. Article 445 of our Code of Criminal Procedure is as follows: "Where one person owns the property, and another person has the possession, charge or control of the same, the ownership thereof may be alleged to be in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them. When the property belongs to the estate of a deceased person, the ownership may be alleged to be in the executor, administrator or heirs of such deceased person or in any one of such heirs. Where it is the separate property of a married woman, the ownership may be alleged to be in her, or in her husband. Where the ownership of the property is unknown to the grand jury, it shall be sufficient to allege that fact." We think the provisions of our Code of Criminal Procedure should, without discussion, dispose of appellant's contention. It is there distinctly provided, "that where it is the separate property of a married woman, the ownership may be alleged to be in her or her husband." If this provision of our Code of Criminal Procedure cannot be held to be applied to an article of, jewelry, the wife's property, which neither waxes nor wanes, does not increase or bear fruit, but which from its nature if for her pleasure and adornment, then this article of the statute could never apply in any case. Nor do we believe that there is any decision of this court which, when fairly analyzed, holds to the contrary. Clearly, the case of Coombes v. State, 17 Texas Crim. App., 258, cannot be by any reasonable construction so interpreted. That case was reversed for the sole and only reason that the ownership of the animal stolen was not proven. In that case the court does say that the burden did not rest upon the State to show the lack of consent for the taking on the part of the wife. That language, of course is to be understood with reference to the fact that this property on the range was productive property, which might have increased, and,

therefore, of a character to be in some sense subject to the husband's control; but even in that case it is clearly stated that while not necessary for the State to negative the giving of the wife's consent to the taking, that proof of such consent might operate as a defense. Nor is it believed that the case of Miles v. State, 51 Texas Crim. Rep., 547; 103 S. W. Rep., 854, is in point; on the contrary, the effect of that decision is to affirm the correctness of the State's position here. The property taken in the Miles case was community property, but the money stolen was in the actual and exclusive possession of the wife. It was there held that the ownership was well laid in the wife, not because she was the wife, but solely and only because the property was in her exclusive possession. Nor is it believed that the mere fact that the ring in question was placed by the wife in a box or receptacle containing the husband's collars would add any force to appellant's position. The proof showed that both husband and wife occupied the room, and the mere fact that temporarily the wife places her ring in her husband's collar box, or any other box in the room occupied by both of them, would not have the effect to make the husband's possession exclusive. To hold that the ownership was not properly laid in the wife, would, in our opinion, render the statute nugatory and meaningless, which we are not disposed to do.

During the trial the following letter was introduced in evidence: "Yesterday morning I lied to you when I said, that I did not get your ring, but this morning I will tell you that I did get it and give you my reasons for owning up to it. 1st. If the ring was never found (and it will never be for it lies beneath several feet of water) people would think that it was just a bluff you were putting up, and it can never be said that a woman suffered the punishment that should fall upon me on account of any act of mine; therefore, for your sake I own up.

"2nd. No one is implicated in it any way but me, and for Lee Rhodes' sake, I own up. I did not lie to you yesterday morning when I said that if it were in my power, I would get the ring for you. Day before yesterday afternoon, when Jack and I rode to town together, the ring was on my person, I went on down to Cedar creek and pitched the ring in the water, for I knew that if I had sent it off anywhere it would be traced. I had the ring in my pocket for two or three days before you found out it was gone, and if three days more had gone by without anything having been said, I would have disposed of the ring in an entirely different manner. I am going to town this afternoon right after dinner. I will be not far from the café all the time. You can come to town then and swear out a warrant for my arrest. I will plead guilty and go either to Huntsville or Rusk. My only request is, that you say nothing to mama or papa until it is done, and then show them this.

JEROME."

As a predicate for its introduction, the State introduced John Sayles, who testified as follows: "That he knew the defendant and knew his

handwriting, and according to his knowledge and belief, the defendant wrote the letter attached to this record." Mrs. Bowie testified that the next morning she went to the defendant, and told him she had seen him with her ring, and that she wanted him to leave it with her, and that he then denied having the ring; that the next day, in the presence of defendant's mother, he told her that he had her ring, and that he had written her a letter in which he had explained to her the entire situation. This witness identified the letter heretofore copied as the same letter she had found on her table in her room. Again, we find the following statement in the record: "She, Mrs. Bowie, further testified that the defendant told her in said conversation that the letter above-mentioned was written by the defendant and placed in her room on her table where she immediately went and found it." Appellant's mother testified that Mrs. Bowie did not have any conversation with defendant in her presence concerning the ring, and that the defendant did not tell her nor any one else in her presence that he had taken Mrs. Bowie's ring, nor did he tell her anything about writing a letter in which he had explained to her about the ring or anything like that. In this connection, counsel for appellant requested the court to charge the jury as follows: "You are herein charged that, unless you believe beyond a reasonable doubt that the defendant wrote the letter offered in evidence, and unless you believe beyond a reasonable doubt that in addition thereto that the letter so written was intended for Mrs. J. B. Bowie, there being nothing in the letter indicating to whom it was intended, then you will not consider the letter so offered in evidence." This charge was refused, and we think correctly so. It contained a statement that there was nothing in the letter to indicate for whom it was intended. It was not vital that the jury should believe that the letter so written was intended for Mrs. Bowie. Even if in proper form we think such an instruction should not have been given. It is a general rule, as we understand, both in civil and in criminal practice, that it is not required, nor indeed good practice, that the court should single out isolated circumstances, and charge the jury with reference to them. This rule is well expressed by Judge Brooks in the case of Gatlin v. State, 40 Texas Crim. Rep., 116; 49 S. W. Rep., 87, where he says: "It certainly does not devolve upon the trial court to single out isolated points of evidence, and tell the jury, seriatim, that these several points do not authorize a conviction." We have frequently held that in cases where the evidence raised the issue of an accomplice, that it was proper for the court to instruct the jury that if they believed that a State's witness was, under the evidence and proper instructions, an accomplice, then they could not convict upon the testimony of such accomplice unless his testimony was corroborated. We have also not infrequently held that where the declarations of an alleged conspirator, made in the absence of a defendant, were offered in evidence, and the fact of a conspiracy was doubtful, or made a question by the evidence, that it was proper to submit such fact to the jury and require its determination in favor of

the State before declarations of an alleged conspirator, in the absence
of a defendant, could be considered by the jury, but it has never been
held to be proper to single out an isolated fact and require the jury to
determine between two opposing witnesses, in respect to the disputed
matter, before such evidence could be considered. The court in this
case charged on the doctrine of reasonable doubt, and it is not con-
ceivable that any jury could have questioned that the letter offered in
evidence could be received and considered against appellant in any pos-
sible contingency unless they found and believed it was written by him.

The evidence supports the finding of the jury, and we believe there
is no error in the record, and it is, therefore, ordered that the judgment
of the court below be and the same is hereby in all things affirmed.

*Affirmed.*