## L. A. HUGHES v. THE STATE.

### No. 4800. Decided June 12, 1918.

**1.—Murder—Continuance—Motion for New Trial.**

Where, upon trial of murder and a conviction of manslaughter, defendant pleaded self-defense, which was one of the principal issues in the case and about which there was conflict of testimony, and it appeared from the record on appeal that his first application for a continuance, alleging the absence of an eyewitness and showing proper diligence in securing him, was overruled, and that his motion for a new trial showed the materiality of the testimony of the absent witness, a new trial should have been granted. Following Roquemore v. State, 54 Texas Crim. Rep., 592, and other cases.

**2.—Same—District Court—Sessions of Court—Suspension of Law.**

Where appellant contended that the District Court of the county of the prosecution was not in session at the time the indictment was filed, and that the judge suspended the law with reference to continuing the court in session, such contention is untenable when the different acts of the Legislature are properly considered, which provide that the term of court shall not expire with reference to a court in session, etc.

**3.—Same—Witness—Convict—Statutes Construed.**

Article 1617, Penal Code, which makes competent the testimony of convicts in prosecutions against one who, while a convict guard, assaults a convict, is valid.

**4.—Same—Evidence—Intention of Defendant.**

Where defendant was prosecuted for killing a convict while he was a convict guard, there was no error in permitting testimony that shortly before the homicide defendant whipped deceased.

Appeal from the District Court of Robertson. Tried below before the Hon. H. S. Morehead.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. C. Scott, Roy D. L. Killough,* and *J. Felton Lane,* for appellant.—On question of continuance: Hodde v. State, 8 Texas Crim. App., 383; McDowell v. State, 10 id., 100; Eldridge v. State, 12 id., 208.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant, under indictment for murder, was convicted of manslaughter.

He was an employe of the State penitentiary, guarding convicts, and shot and killed Gaston Pope, a convict. The controverted issue was under what circumstances the homicide took place. The State's theory tended to show an unprovoked murder; that of appellant pointed to justification upon the ground of self-defense. To support its theory the State relied upon the testimony of several witnesses who were convicts. It appears that shortly after the homicide each of these State's witnesses signed a written statement giving their respective versions of the incidents of the occurrence. Each of these statements were favorable to appellant's theory, stating, in substance, that at the time he was shot deceased was approaching appellant with a hoe in his hands; that his words and attitude were threatening; that appellant called upon him more than once to stop before he fired the fatal shot, which took effect in the breast of deceased. We quote from the written statement of one of these witnesses as follows: "The first I saw or heard was I heard Pope say, 'By God, boss, you got me to kill,' and then he turned around and started toward Boss Hughes with his hoe and Boss Hughes told him if he come at him with that hoe he would kill him, and Pope went on pretty close to him." On the trial of the case each of these

witnesses gave damaging testimony against the appellant in conflict with the witnesses' written statements, claiming, in substance, that the written statements were not true but were made under the influence of various officers of the penitentiary system, and were unduly favorable to appellant because of fear upon the part of the witnesses to make them otherwise. This was controverted by the several witnesses who were present at the time the statements were taken, including a justice of the peace, who testified, in substance, that he read over the written statements to the witnesses; that they were not threatened; that the only person present with him was a man who was not connected with the penitentiary system; that the men severely acknowledged in his presence the truth of the statements, and stated they would swear thereto; that it was possible that part of the time one of the defendant's witnesses, who was an employe of the prison system, was present.

Appellant made a first application for a continuance alleging, among other things, that A. F. Schacke, an eyewitness, for whose attendance diligence had been used, was sick and unable to attend the trial. It appears that this witness was a convict, and that he, with the other convict witnesses, had made a written statement which was attached to the motion for a continuance, and contained the following: "I was in Boss Lee Hughes' squad when he killed Gaston Pope. The first I saw was when Pope passed me going toward Boss Hughes with a hoe in his hand and said, 'God damn you, you have got to kill me.' Boss Hughes said, 'Don't come too close to me with that hoe.' The next I heard was the gun fired." Appellant testified, in substance, that deceased when twenty-five or thirty steps ahead of him turned around and came back at him with his hoe on his shoulder, saying he was going to "make me kill him, when I told him to throw his hoe down and stop. Deceased was taking long steps tolerable fast; he had his hoe over his shoulder (illustrating); that deceased said, 'God damn you, I am going to make you kill me.'" Deceased was told by appellant several times to stop but continued advancing. The hoe was exhibited in evidence. Appellant said, "I knew he would kill me with the hoe if I did not stop him." He said deceased continued advancing until he was shot. Patrick, the assistant manager of the farms, who was in charge of the squads of convicts, one of which was under appellant's immediate direction, testified corroborating the statement of appellant as to the manner in which the homicide took place. Patrick said: "Pope was somewhere up about the head of the squad and he just drawed his hoe back and started at the defendant, cursing him. Pope said, 'God damn you, you have got to kill me or I am going to get you.' Mr. Hughes told him to stop. He told him to stop two or three times. Mr. Hughes had his gloves on his hands at the time, and laid his gun down between him and his saddle and pulled off one of his gloves, and told deceased to lay down his hoe or he would kill him. Deceased continued to advance until he was about twelve feet from appellant when the shot was fired." Witness said the hoe, in his judg-

ment, was a deadly weapon, and that Pope could have killed appellant with it.

On the hearing of the application for a new trial there was before the court an affidavit of the witness A. F. Schacke, which we copy as follows:

"I appeared as a witness before Justice W. C. Lovelace, the justice of the peace, at the inquest proceedings on the body of Gaston Pope. The statement that I made and swore to before the justice of the peace was true. I was present at the time that Gaston Pope was killed by L. A. Hughes. At the time he was killed deceased was walking up on Mr. Hughes with a hoe in his hands and said to Mr. Hughes, 'Damn you, you have got to kill me.' He was carrying it in his hand with the hoe part up. He was walking a little faster than an ordinary walk. Mr. Hughes, while the deceased was walking up on him, said, 'Stay on back, keep your distance away from me; don't come up on me; don't come up close to me at all.' He walked right up on Mr. Hughes, who was sitting on the horse, and next thing I heard was the gun fire.

"I never at any time saw Mr. Hughes whip the deceased. I was before the grand jury, and was subpoenaed as a witness, but was too sick to attend the trial of the case, which began July 23, 1917. I was sick in bed and unable to come to court. I was brought up here today."

We are of opinion that in view of the record disclosing, as it does, a sharp issue of fact touching the immediate incidents of the homicide, the trial court was in error in failing to grant the motion for a new trial. The appellant was entitled to have the jury determine the controverted issue, and it can not be said that the testimony of the absent witness would not have had weight with the jury. His testimony, if true, supported the theory of appellant, and if believed might have resulted in a verdict of acquittal. Appellant had used diligence to procure the attendance of the witness. His absence was accounted for in a satisfactory manner, and it is appellant's right to have the jury determine whether the testimony of this witness was true or false. Among the cases in point are Roquemore v. State, 54 Texas Crim. Rep., 592, and Woods v. State, 203 S. W. Rep., 55.

The contention of appellant that the District Court of Robertson County was not in session at the time the indictment was filed can not be sustained. The contention of appellant is not made right clear. As we understand it, however, it asserts the proposition that Chapter 96 of the Acts of the Thirty-fifth Legislature, page 256, reorganizing the Twentieth and creating the Eighty-fifth Judicial Districts, operated to terminate the session of court at which the bill was returned before the date the indictment was returned, and that section 19 of the Act providing, that if court is in session by virtue of existing laws at the time that this Act becomes effective, that this Act shall not be operative as to said court so in session until after the term shall have expired or shall be terminated by order of the judge, is an unconstitutional provision delegating to the judge the power to suspend laws contrary to article 1, section 28, of the Constitution, which vests that power in the

Legislature alone. This view, we think, is unsound. If there is any suspension of the law in this instance, it is by the Legislature and not by the judge.

Appellant has presented no convincing reason supporting his claim of the invalidity of article 1617, P. C., which makes competent the evidence of convicts in prosecutions against one who while a convict guard assaults a convict, and we think his view that the evidence that shortly before the homicide he whipped the deceased was inadmissible should not be sustained. It tended to show appellant's state of mind touching the deceased.

The other assignments presenting no reversible error will not be discussed in detail.

For the error pointed out the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*