MIKE NICHOLS v. THE STATE.

No. 6552.  Decided February 15, 1922.

Rehearing Denied March 15, 1922.

### 1.—Theft—Evidence—Other Testimony—Practice in Trial Court.

Where, upon trial of theft, defendant objected to testimony that Mrs. Hawes and Walker registered at a certain hotel as man and wife, etc., but the bill as qualified showed that no error was commited, and that the matters complained of in the bill were testified to by the defendant himself, there was no reversible error. Following Wagner v. State, 53 Texas Crim. Rep., 306.

### 2.—Same—Evidence—Flight—Other Circumstances.

Where defendant in his own testimony explained his flight to Oklahoma by claiming that he was fearful of trouble in connection with some whisky, there was no reversible error that on a certain occasion the fact was revealed that he had some corn whisky along. Following Miller v. State, 31 Texas Crim. Rep., 609.

### 3.—Same—Evidence—Suppressing Testimony—Consciousness of Guilt.

Upon trial of theft there was no error in introducing testimony that defendant proposed to marry his co-defendant, Frances Hawes, it being shown in connection with the propsal that his object was to render her testimony unavailable to the State.

4.—Same—Evidence—Assuming Name—Jail Register.

Upon trial of theft there was no error in introducing testimony that defendant, while in Oklahoma, went under the name of Collins, and it was brought out on cross-examination by defendant's counsel that the witness was told that defendant's name appeared as "Collins" on the jail register; and the objection to the testimony that he was in jail is likewise untenable.

5.—Same—Requested Charges—Bill of Exceptions.

Where, in the accepted bill of exceptions, it was declared by the trial judge that there was neither written nor verbal exceptions ·to his refusal of the requested charges, same could not be considered on appeal; besides, had they been properly presented, there was no reversible error. Following Barrios v. State, 83 Texas Crim. Rep., 550.

6.—Same—Alibi—Charge of Court—Circumstantial Evidence.

Where the court's charge on alibi, and on circumstantial evidence were both in full accord with approved precedents, there was no reversible error.

7.—Same—Flight—Evidence—Discrediting Incident—Res Gestae.

If, in proving the flight of the defendant there was developed discrediting incidents, they appeared but *res gestae* of the flight, and corroborative of the accomplice witness, and there was no·reversible error. Following Roquemore v. State, 59 Texas Crim. Rep., 568.

8.—Same—Rehearing—Facts Stated in Opinion—Practice on Appeal.

It is scarcely necessary for counsel in any case to challenge this court to verify any conclusion it reaches as to the facts or as to the correctness of any proposition of law stated; as this court is always ready to correct mistakes. However, the facts stated in the original opinion by the court are amply borne out by the record, and the motion for rehearing is overruled.

Appeal from the District Court of·Milam. Tried below before the Honorable John Watson.

Appeal from a conviction of theft; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*R. Lyles* and *Robert M. Lyles*, for appellant.—On question of assumed name of defendant: Howe v. State, 177 S. W. Rep., 497; McConico v. State, 133 id., 1047; Sasser v. State, 166 id., 1160, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Conviction is for theft; punishment fixed at confinement in the penitentiary for a period of four years.

On the night of December 14th, the store of the Thorndale Mercantile Company, situated in the village of Thorndale, Texas, was burglarized and various articles of merchandise of the value of about $1200 were taken from it. A part of the property was found in the posses-

sion of Mrs. Francis Hawes at San Marcos, Texas. The remainder was recovered from the premises of Earl Allison, situated about six miles from the city of Cameron in Milam County. When recovered, a part of the property was in suit-cases in the attic of Allison's house and a part of it was buried in the ground some distance therefrom.

It was the theory of the State, supported by testimony, that the offense was committed by the appellant, Mike Nichols, Bryant Walker, and Raymond Allison; that Raymond was a brother of Earl Allison and dwelled at the same place. Circumstances were relied upon to establish the State's case.

The appellant resided in Rogers, Bell County, Texas, and was arrested in the state of Oklahoma. From appellant's testimony, it appears that he went in his automobile to Thorndale on the 14th of December in company with Bryant Walker, Hugh Walker, and Raymond Allison; that Raymond Allison stopped at Cameron, the remainder of the party going to Thorndale.for the purpose of gambling with cards; that following this, appellant, leaving Bryant and Hugh Walker at Thorndale in his automobile, proceeded to Rogers, reaching there about 10:30 at night, going to his mother's, home; that on the next day, Bryant Walker and Raymond Allison went in appellant's car to Taylor, he following them on the train at night. That night Raymond Allison, Bryant Walker and Francis Hawes came to Cameron, on the way passing through Thorndale at night. On reaching Cameron, they went to a cafe where appellant left Bryant Walker, Allison and Mrs. Hawes. They said they were going to a hotel. Appellant left his car with them. The next morning, he met them in the car and all went to see Mrs. Fisher, Raymond Allison's girl, who lived near the home of Earl and Raymond Allison, where the party stopped. While there, they did not remain in company with each other all the time. When appellant went in the house, he found Bryant Walker, Raymond Allison and Mrs. Hawes with some suit-cases and some hand-bags and dry-goods, all being new merchandise. On reaching the home of Mrs. Fisher, Raymond Allison and Francis Hawes got out of the car, and later joined appellant and Walker. The party proceeded to Rogers and then went to the country for a couple of girls,—one for appellant and one for Raymond Allison,—and brought them back to Rogers. On the following morning, Allison and appellant returned with the two girls and upon returning, were informed by Bryant Walker that they were in danger of getting in trouble about some whisky; that, anticipating trouble about the whisky, they went to Oklahoma and sent Mrs. Hawes from Temple by rail. They stayed at Drumwright, Oklahoma. Appellant while there, assumed a different name, rented a room and spent the night. The next morning they drove to town in the car and were arrested. After making bond, appellant went to San Marcos and proposed to marry Francis Hawes, he having been thrown in such bad light as to make it difficult to extricate himself; and he, understanding that a wife could

not testify against him, sought to marry her. She refused to marry him.

Appellant denied that he took part in the burglary, though he was present when the goods were exhibited at Allison's house; that they were exhibited by Bryant Walker; that he saw Walker give Mrs. Hawes a cloak.

Mrs. Francis Hawes testified that she had married in 1918; that she had separated from her husband; that while working in a Harvey House in Oklahoma she met Bryant Walker and became engaged to marry him; that on the 15th of December, he called her over long distance telephone and she went to Taylor, where she was met by Bryant Walker and Raymond Allison; that they went to Thrall and back to Taylor after the Appellant; that they all rode in an Essex car and went to Thrall and from there to Cameron; that she and Walker and Allison went to a hotel; that she did not know where appellant went, but he said he was going to see Gladys. Mrs. Hawes and Walker registered as husband and wife,—Mr. and Mrs. McVey. Allison occupied a room across the hall. She described the trip on the following morning over to see Allison's girl, and to the home of Raymond Allison and his brother Earl, and said that there certain merchandise was exhibited and a cloak given to her; that they returned to Rogers; that Allison and appellant went and brought some women; that she went from Rogers to San Marcos; that appellant had sought her at San Marcos and proposed to marry her; that his attorney accompanied him on some of the occasions.

Earl Allison testified that the stolen goods were put in his house on the night of December 14th by some one, whom he supposed to be his brother Raymond.

To the testimony that Mrs. Hawes and Walker registered at the hotel as man and wife; that appellant said he was going down to see Gladys, and that on the following morning they went down passed the depot and stock yards to a white house over across the railroads after the appellant, there was objection made. That touching the last referred to was that it was a matter of common knowledge that the white house was one of ill repute. The bill, as qualified, shows there was no evidence that it was of such repute. Touching the other matters complained of in the bills, substantially the same facts are revealed by appellant's testimony. That being true, complaint of its repetition from other sources without objection is untenable. Wagner v. State, 53 Texas Crim. Rep. 306, and cases cited. From appellant's testimony and from the testimony of Francis Hawes, it is obvious that the jury could not have failed to have understood that she was a paramour of Walker; that they spent the night together at the hotel. We fail to comprehend the importance of the additional fact that they registered at the hotel as man and wife. They were associates of the appellant, and from his own testimony and from that of Mrs. Hawes, not complained of, the relation of the parties was made clear, as was

also appellant's knowledge of it, According to his own testimony, he and Raymond Allison, each wanting a girl, had procured them at Rogers. We fail to understand why appellant's case would have been tainted with prejudice by the knowledge given the jury of the fact that his companions—Mrs. Hawes and Walker—had held themselves out as husband and wife.

Mrs. Hawes, in relating the fact that appellant and Allison went to the country and brought in some girls, also revealed the fact that they brought some corn whisky along. This was promptly withdrawn and the court instructed the jury to ignore it. Appellant, in his own testimony, explained his flight to Oklahoma by claiming that he was fearful of trouble in connection with some whisky. There was, in our opinion, no harmful error. Miller v. State, 31 Texas Crim. Rep. 609.

Complaint is made of the receipt in evidence of the testimony of Francis Hawes to the effect that appellant had proposed to marry her. In connection with the proposal, he made to her declarations from which the jury might have justly drawn the inference that his object was to render her testimony unavailable to the State. This appeared also from his own testimony to the effect that he knew that if she was his wife, she could not give evidence against him. We regard the testimony as admissible under the rule permitting proof of effort to suppress testimony. Underhill on Crim. Evidence, Sec. 264; Cyc. of Law & Proc., Vol. 12, p. 386; Branch's Ann. Texas Penal Code, p. 93. It was also available to the State as a fact showing consciousness of guilt. Underhill on Crim. Evidence, Sec. 115. The same testimony also came voluntarily from the appellant. Having proved the same fact, he is not in a position to complain of its proof by the State. Wagner v. State, 53 Texas Crim. Rep. 306.

After appellant was arrested and while he was in jail in Oklahoma, an officer went for him and brought him to Texas. This officer, as a witness, testified that appellant, while in Oklahoma, went under the name of Collins. Upon his making this statement, counsel for appellant, with the permission of the court, interrogated the officer touching his means of knowledge, and the officer said that he saw on the register in the jail the name: "Mike Nichols, alias R. N. Collins;" that he supposed it was made by the jail clerk. The court refused to exclude the testimony. Granting that it should have been excluded, as secondary or hearsay evidence, we think the failure to do so was not error which justified a reversal of the judgment. Appellant testified that while in Oklahoma, he used an assumed name. At the time of his arrest, there were found in his possession two letters which he admitted writing, and which he had prepared for mailing, signed R. N. Collins. In view of this evidence to the effect that he was using the name of Collins, the additional fact that it was written upon the jail record would not vitiate the conviction. Against this testimony the argument is made that it tended to discredit the appellant and prejudice the case before the jury because it was a jail record,

and from it the jury might draw the inference that he was an habitual criminal. Considering the fact that he was arrested and in jail, charged with the present offense, and that it was proved by other evidence that he was using the assumed name of Collins, we think the point is not well taken.

In the record, there is a copy of some proffered special charges. In the accepted bill of exceptions it is declared by the trial judge that there was neither written nor verbal exception to his refusal of the charges. Our statute makes it necessary that the refusal of a special charge be made the subject of exception in order to entitle the ruling to review. We will add that, in our opinion, if properly presented, the refusal of the charges was not error. Acts of 33rd Leg., p. 278; Barrios v. State, 83 Texas Crim. Rep. 550, and cases therein cited.

The court instructed thus: "If the evidence raises in your mind a reasonable doubt as to the presence of the defendant at the time and place when and where said property was fraudulently taken from Gus Newton, if you find same was taken, you will find the defendant not guilty."

The charge on alibi, which we have quoted, is in language heretofore approved in Gallaher v. State, 28 Texas Crim. App., 278, and is in substance the same as many others which have been sanctioned. See Branch's Ann. Texas Penal Code, Sec. 52. The charge on circumstantial evidence, we think, is in full accord with approved precedents.

In a brief and argument showing research and zeal, appellant's counsel insists that the enhanced penalty was the result of discrediting facts improperly admitted. The competency of evidence tending to show appellant's flight and his efforts to suppress testimony was obviously relevant. His movement after the offense was committed is inextricably interwoven with that of his chosen associates. If, in proving the flight, there was developed discrediting incidents, they appeared but res gestæ of the flight and corroborative of the accomplice witness. The cases to which appellant refers are those in which matters tending to discredit the accused, disconnected from or collateral to the relevant facts, have been held reversible error. See Roquemore v. State, 59 Texas Crim. Rep. 568, 129 S. W. Rep. 1123. The incidents, the admission of which appellant complains, are, as we have pointed out, of a different type. Moreover, as indicated above, the same facts were revealed by evidence admitted without objection.

We do not find any error in the record that would warrant a disturbance of the verdict.

The judgment is affirmed.

*Affirmed.*

March 15, 1922.

HAWKINS, JUDGE.—In his motion for rehearing counsel for appellant takes the following two quotations from our opinion.

"Granting that it should have been excluded as secondary or hearsay evidence, we think the failure to do so was not error which justified a reversal of the judgment. Appellant testified that while in Oklahoma he used an assumed name. At the time of his arrest, there were found in his possession two letters which he admitted writing and which he had prepared for mailing, signed R. M. Collins. In view of this evidence to the effect that he was using the name of Collins, the additional fact that it was written upon the jail record did not vitiate the conviction."

"They stayed at Drumwright, Oklahoma. Appellant while there assumed a different name, rented a room and spent the night."

Counsel then asserts that "either the court or appellant's counsel has not read this record correctly and *challenges* the court to examine the record and find that these quotations are not borne out by the record."

It is scarcely necessary for counsel in any case to *challenge* this court to verify any conclusion it reaches as to the facts or as to the correctness of any proposition of law stated. Notwithstanding the vast press of work now upon the court if we should make a mistake as to the facts or law, no attorney however interested he may be in his client, can have a greater desire that such error be corrected than the members of this court. From page forty-two of the statement of facts we quote: "We went to Temple and put Francis on the train there and all three of us got in the car and went to Drumwright, Oklahoma. . . . I had been there before; I stayed in Drumwright and the oil fields around there practically three years. I had worked all over the oil fields, I was pretty well known. I went under my own name. I used an assumed name one time. I was not known under the name of R. N. Collins. After we got there we went to the Bly rooming house, the place we had stayed at before when we were there and rented a room and paid for it a week. It was rather late when we got there, but we went up town a little while and fooled around a little and went back and went to bed."

The foregoing is from appellant's testimony on direct examination.

From page fifty of the statement of facts on his cross-examination we quote as follows: "I was arrested in Drumwright on Tuesday morning. . . . I dont think anybody knew where I was back home . . . I did not state I went under an assumed name once. He (Lyles) asked me if I went under, the name of R. N. Collins, and I said one time. That was in a letter I wrote on this trip, that was a letter I wrote to my brother. I did not give my name in to the chief of police of Drumwright as R. N. Collins. I do not know how

he got that name on the register. I wrote my brother and asked him to see how everything was there. I told him there was a couple of detectives in town the day we left and we left in a hurry.· . . . I knew if they were watching and my brother sent me anything in my own name that they could follow it. Those letters were in my pocket when I was arrested, the chief of police got them. . .    . I wrote to Miss Gregory and my brother, Tom Nichols. . . . That R. N. Collins, I wrote that; they are to Tom Nichols and Hattie Gregory. I think those are the letters I wrote December 20th, 1920. The letter could have been changed; I believe it is my handwriting, I am not for sure. I thought you had those letters; I knew the chief of police took them off of me before I mailed them.''

The State introduced a letter addressed to Tom Nichols, Rogers, Texas, dated Drumwright, Oklahoma, December 20, 1920, as follows: .

''*Dear Bro*:-

''Will try and write a few lines am getting along pretty well. Raymond and Bryan and myself are together. I want you to go to mamas and gather my clothes. up and send them to me. Just send the last suit I bought and underclothes, sox, shoes, shirts, everything only send the one suit. Be sure and get my safety razor. They are a spot light in my trunk that goes on the wind shield of a car send it too. Tell mama I will write her in a few days that didn't think it necessary to write both at the same time. I left in such a hurry didn't have time to see any one or do anything. I think they arrested Hugh the morning we left. Find out the particulars and let me know. Be sure you don tell any one where I am and tell mama not to. I am going to stay here a week. Dont know for sure where I will go then. The law has been eying us over here am afraid they have got some word from down there. I want you to write me just as soon as you get this so I will know about Hugh and send my clothes as soon as you can so I can leave here if necessary. Get Everet Cole or some negro get old negro Jim from down South if you can to send my clothes. They may be watching everything. They was a bunch of law in R— the morning we left two detectives I know. Well dont know any news so will close.

Signed Your Bro. Mr. R. N. Collins,
Drumwright, Oklahoma.''

The following letter addressed to Miss Hattie Gregory, Holland, Texas, was introduced in evidence by the State:

''*Dearest*:-

Just a few lines am getting along pretty well. Intend to stay here about a week dont know for sure where or what then. We are looking for a location but are not going to lite until we find what we want. Had to leave R. just as soon as we got there. Listen Raymond didn't get to explain everything to his girl. Besides she

doesnt know anything about you or Francis. He is writing her now and said he was going to tell her to write you. Kindly explain things to her so she will know what kind of girls she is going to be with. We are looking for a house for all of us to live together where we can do as we please and have all of the fun possible. Hon you want to be dam sure and not tell anybody where I am and not a thing I have told you. The least you can talk the better we will both be. And besides I cant use you unless you know how to keep anything and are willing to do it. Dont tell a soul where I am done even let any one know you have heard from me. Write my address on something and tear this up the sooner the better. Well dont know any news so will close let me hear from you at once before I leave here. Lots of love.''

This letter was also signed ''MR. R. N. COLLINS, Drumwright, Oklahoma.''

From the foregoing references to the statement of facts we think we were justified in reaching the conclusion upon the facts announced in the original opinion, and that we were not only correct in the conclusion as to the facts, but that the conclusions of law reached were proper, and that the case was properly disposed of.

The motion for rehearing is overruled.

*Overruled.*