## JETTIE SMITH v. THE STATE.

No. 15402. Delivered December 14, 1932.
Rehearing Denied February 22, 1933.
Reported in 57 S. W. (2d) 132.

The opinion states the case.

*J. J. Collins* and *R. W. Fairchild,* both of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, cattle theft; the punishment, two years in the penitentiary.

A witness by the name of Dora Wheeler testified that on the 31st day of January, 1929, she lived at Camden, Texas. She was married at that time to Jack Wheeler; that he was living on January 31, 1929, but died on February 26, 1931. She and her husband owned some cattle and on January 31, 1929, she turned the cattle out. This was on Wednesday or Thursday and on Friday the cattle not having returned her husband went to look for them but he didn't bring the cattle back. After he couldn't find the cattle he reported the same to the officers; that after the cattle had been turned out she never saw but one of them. A man by the name of Will Neal and another man brought one head of the cattle she had turned out back to her. The cattle were marked by a cut in the ear and the mark had been cut out of the ear of the head of cattle returned to her. The cow brought back was a little red heifer and her ears were still bleeding when it was returned to her. The ears were not in that shape when she turned them out on Wednesday or Thursday; that neither the appellant or any one else had ever claimed the cow after she got it back and she didn't give her consent to anyone taking the cow or marking it.

R. D. Holliday, sheriff of Polk county, testified that he had known the appellant for about 15 years and had also known Jack Wheeler, a negro, for about four or five years. The said Jack Wheeler came to his office and he obtained a search warrant for the appellant's place, and at daylight the next morning he went to appellant's house with a description of the cow Jack Wheeler had lost and at the appellant's place they found a heifer that fit the description of the one given him by Jack Wheeler; that one of the cattle found was a muley cow, and there was a heifer or two, and one heifer in the bunch was not marked; one was a red heifer about a year old and her ears had been cut. There was also a little calf. When he first got to the house the appellant was in bed, and after he found the

cattle described he went to Corrigan and got Jack Wheeler and Kennie Robinson and showed them the cattle, and Will Neal, Will Hickman, Jack Wheeler, and Kennie Robinson drove the cattle away at his request. He further testified that the cattle he found at appellant's home were some cattle claimed by Kennie Robinson and Jack Wheeler. Three of these cattle were delivered to Kennie Robinson and one head to Jack Wheeler. One of the cows had a new calf and there were four or five head including the calf. He only returned one head to Jack Wheeler and that was the one Jack Wheeler identified, which was a red heifer. Her ears were cut off and they were fresh marked. At the time they found the cattle there was no one on the place except the appellant and his wife and two small children. It is further in testimony that all of the cattle claimed by the two negroes, Wheeler and Robinson, were in a little pasture close to the barn except a cow and a little calf that was in the barn.

Mrs. Jettie Smith, the wife of the appellant, testified that they had two children and she and her husband were living in their own home and had about 85 or 90 acres of land there and her husband had a large pasture leased in which he kept a large number of cattle from time to time. He had had this place under lease for about a year. The officers came to her house and aroused her husband and children and placed her husband under arrest and on the same day some cattle in the lot were carried away by the parties; that the cattle were penned in their lot on Thursday afternoon and were taken away Saturday morning; that her brother, J. P. Sirmon, put the cattle in the lot; that her brother came to her house before these cattle were penned some time in the afternoon and stated that he had seen some of her husband's cattle with some cattle that were freshly marked and her brother gave her a description of the cattle; that she didn't know whether her husband owned them or not but she told her brother to pen the cattle in the pen until her husband came home and if they were not his they would turn them out; that her brother did so and the cattle were penned with some of their cattle; that after the cattle were penned one of the cows had a calf and she put the mother with the calf in a stall to keep a mule from killing the calf. At the time she put them in the stall it was not her intention to take any one else's property. She further testified that her husband had gone to Houston Thursday afternoon and was gone when her brother came to her house and told her about the cattle. Her husband didn't know anything about the cattle being penned until he came back from Houston on Friday night

about 10 o'clock; that she told him about the cattle but he didn't go and look at them that night, but he said he would look at them the next morning, and the next morning before he had an opportunity to look at the cattle the officers came to their house.

The state also showed by the witness Holliday in rebuttal of the testimony of the appellant's wife that while he was at the appellant's house the appellant's wife stated to him not to take the cattle off; that they belonged to her, she bought them with some money she got from her mother's estate; that he was not offering to take any other cattle away and made no effort to take any cattle away except cattle that had been identified by the two negroes. To the same effect was the testimony of one or two other witnesses in rebuttal.

By bill of exception appellant complains that the court erred in overruling appellant's motion for an instructed verdict of not guilty because there was a material variance between the allegations in the indictment and the proof as to the possession of the animal charged to have been stolen in that the indictment charged possession and ownership in Jack Wheeler, whereas proof showed that the cattle was the separate property of Dora Wheeler, his wife, who was the last person to exercise control and management of the animal before it was taken from its accustomed range. The testimony of the witness Dora Wheeler is not clear as to whether she contended that the cattle stolen was her separate property or the community property of herself and her husband. It has been held by this court that ownership of separate property of the wife may be alleged to be in either the husband or the wife. Branch's Ann. P. C., sec. 2438; Sinclair v. State, 34 Texas Crim. Rep., 453, 30 S. W., 1070; Kaufman v. State, 53 Texas Crim. Rep., 210, 109 S. W., 172. "Ownership of the wife's separate property or of the community property may be alleged to be in her husband." Branch's Ann. P. C., sec. 2438; McGee v. State, 46 S. W., 930; Smith v. State, 53 Texas Crim. Rep., 646, 111 S. W., 939. We do not think that any error was committed in overruling appellant's motion for an instructed verdict of not guilty by reason of any variance between allegations in the indictment and the proof.

By bill of exception it is shown that the trial court, over appellant's objection, excused nine regularly selected jurors summoned to serve for the week at the time of the appellant's trial. The bill of exception shows that all of said jurors excused by the court had sat as jurors at a former date upon the trial of the case of State v. Jettie Smith, No. 6348, wherein he was

charged by indictment with the theft of cattle from Kennie Robinson. It is further shown that in this case the appellant was charged with the theft of cattle from one Jack Wheeler. The bill further shows that each of said jurors testified on their voire dire that the fact they had sat as jurors in the case wherein the appellant was charged with the theft of the cattle from the said Kennie Robinson would not in any way have any bearing on them in their consideration on the trial of this case. The court overruled appellant's objection to the discharge of said jurors and held such jurors disqualified and excused them from the jury panel in this case and ordered the sheriff to summon talesmen to fill out the jury. The bill further shows that had not the said jurors been excused by the court they would have been acceptable jurors to the appellant to try this case. The court allowed said bill with the following qualification: "It was practically conceded by state's counsel that the jurors excused sat in a companion case where the same culpable facts occurred and which had resulted in an acquittal and the court did not deem it fair that said jurors should sit in this case regardless of what they did in the former case and for that reason they were stood aside." The facts in this case show that several head of cattle identified by Kennie Robinson as being his cattle were found in appellant's lot at the same time that the head of cattle claimed to have been lost by Jack Wheeler was found. There is no contention that the case in which these jurors had sat was not similar so far as the witnesses and their testimony were concerned as the present case, except as to the ownership of the cattle involved, or that it was not a companion case where the same culpable facts occurred as in this case and which had resulted in an acquittal.

While the trial court has no authority to arbitrarily discharge a panel regularly drawn for the week or to arbitrarily remove from the jury panel any juror who is not disqualified to try the case, still a discretion is vested in the trial court in organizing the jury and the control of the proceedings by which a jury is finally selected is committed to the discretion of the court, the primary object of the proceedings being the empanelment of an impartial jury. How many of the jury panel for the week were left after the court had excused nine jurors is not shown. The bill of exception fails to show that the appellant exhausted all of his peremptory challenges and that he was required to take any objectionable juror. Hence, if the court was in error in excusing the jurors, and this is not conceded, appellant having failed to show that he was injured is not entitled to a reversal as it does not appear that any mandatory

provisions of our statute relating to the jury law have been infringed. See Hodge v. State, 18 S. W. (2d) 167.

Appellant complains that since the indictment in this case charged the appellant with the theft of one head of cattle, and the evidence, which was circumstantial, tended to show three head of cattle taken, the court erred in refusing to compel the state to elect for which head of cattle a conviction would be claimed. The wife of Jack Wheeler, the person alleged in the indictment whose cattle were taken, testified that while she had turned three head of cattle out on the range, the only head of cattle returned to her was a little red heifer. The indictment in this case contained only one count, which charged the appellant with taking of one head of cattle belonging to Jack Wheeler. The charge of the court instructed the jury that the appellant was being tried for the offense of theft of one head of cattle alleged to have been the property of Jack Wheeler. Only one head of cattle, the little red heifer which was claimed by the wife of the said Jack Wheeler as one of the cattle lost by her, was found on the premises and in the pen of appellant. As we construe the charge of the court, therefore, the issue of theft of only one head of cattle was submitted to the jury. There is no evidence that the appellant was ever found in possession of the other two cattle missing. The charge of the court was equivalent to an election by the state. The state relied only for conviction as to the theft of the red heifer found on the premises of the appellant. See Weathersby v. State, 1 Texas App., 646; Dalton v. State, 4 Texas App., 333; Matthews v. State, 10 Texas App., 279; Parks v. State, 29 Texas App., 597.

Appellant also excepted to the charge of the court on the law of principals in that he thereby authorized a conviction of the appellant upon a state of facts not made by the evidence. Appellant also excepted to the charge of the court in that the court erred in failing and refusing to give to the jury a charge applying the abstract statement of the law of principals as contained in his charge to the facts of the case. A witness for the state testified that the evening before the day the cattle were found in the lot of the appellant he saw two men driving three head of red cattle a little before sundown and he knew that one of the men was the appellant, and he wasn't sure who the other person was but believed it to be one of the Sirmon boys. No special charge was requested by the appellant seeking to apply the law of principals to the facts of the case. The appellant's wife, the only witness introduced by him, testified that the animal in controversy was penned by her brother, J. P. Sirmon, at her request at a time when her husband was absent from

home. The court in his general charge embraced a special charge requested by appellant as follows: "If you find from the evidence that J. P. Sirmon acting upon the request of Mrs. Jettie Smith penned the animal in controversy at the home of Jettie Smith at a time when the defendant was absent therefrom, then in that event you will acquit the defendant, or if you have a reasonable doubt thereof, you will acquit the defendant." The effect of the charge given was that, if the appellant was not present when the cattle were penned, he would not be a principal in the taking of said cattle. This sufficiently applied the law to the facts as testified to by appellant's wife.

Appellant also contends that the court erred in failing and refusing to give to the jury a charge submitting the defensive theory of alibi in an affirmative way, since the evidence raised such issue, and further that the court erred in charging the jury upon the law of alibi in failing to apply the law to the facts. On the issue of alibi, the trial court charged the jury as follows: "Among other defenses set up by the defendant is what is known as alibi, that is, if the offense was committed as alleged, the defendant was at the time of the commission thereof at another and different place from that at which such offense was committed and therefore was not and could not have been the person who committed the same. Now, if the evidence raises in your mind a reasonable doubt as to the presence of the defendant at the place where the offense was committed (if committed) at the time of the commission thereof, you will find him not guilty." He further instructed the jury: "Unless you find from the evidence beyond a reasonable doubt that the defendant was present and participated in the original taking of the cattle involved, if you find they were so taken from their accustomed range, you will acquit the defendant, or, if upon this point you have a reasonable doubt, you will return a verdict of not guilty in this case." We think the charge taken as a whole correctly presented the defensive theory affirmatively.

By bill of exception, appellant raises the question that over the objection of the appellant the court permitted the state to introduce in evidence in this case the indictment showing certain names on the back thereof. The appellant objected to the introduction of same for the reason that the indictment was the state's pleading in the case and further objected to reading any names from the back of said indictment because the same was not proof of anything and was not proof of the appellant's guilt, and the mere fact that an indictment was returned against appellant could not be considered as a circumstance of

guilt on the part of the defendant. The trial judge qualified said bill as follows: "The injured party being dead at the time of the trial, his name on the back of the indictment was admitted in evidence as a circumstance of non-consent and was limited." This qualification is not excepted to by the appellant. Want of consent may be proven by circumstantial evidence if the alleged owner is dead, incompetent to testify, or when without fault on the part of the state direct testimony cannot be produced. Section 2452, Branch's Ann. P. C.; Jordan v. State, 51 Texas Crim. Rep., 647, 104 S. W., 900; Nixon v. State, 93 S. W., 555; Wilson v. State, 45 Texas, 76. The indictment could not be offered as a circumstance of guilt on the part of the appellant and under the qualification of the court, in the absence of any other showing or contention, we must presume that the court so instructed the jury and limited the consideration by the jury of said indictment, and the witness on the back thereof, to be considered only, if considered at all, as a circumstance of the nonconsent of the person charged in the indictment to be the owner of the animal alleged to have been taken. There was no attempt on the part of the appellant, so far as any evidence introduced by him shows, to show that the cow found in his lot was his animal and was not the property of Jack Wheeler. There was no issue raised by the evidence in the case that the said Jack Wheeler ever consented to the taking of the animal described in the indictment. We do not believe that reversible error is shown.

Appellant also complains of the refusal of the trial court to give an instructed verdict asked by the appellant instructing the jury to acquit him because of the insufficiency of the evidence to support a conviction. That possession of recent stolen property is sufficient to sustain a conviction for theft of property has been affirmed by this court in numerous cases, many of which are collated by Mr. Branch in his Ann. Tex. P. C., sec. 2463. See also Vernon's Ann. Tex. P. C., 1925, vol. 3, p. 147, note 34; Roberts v. State, 17 Texas App., 82. We think an inference of guilt in this case from the circumstances of recent possession was justified, especially since there was present circumstances and facts which authorized the jury to disbelieve testimony of the accused's wife's explanation of the possession of said cattle. Such evidence seems to be sufficient under the authorities. Roberts v. State, supra; Teague v. State, 31 S. W., 401; Odell v. State, 71 S. W., 971; Roberts v. State, 60 Texas Crim. Rep., 24.

There are 19 bills of exception in the record. All bills found in the record which have not been discussed have been exam-

ined and none of them, in our opinion, present reversible error.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant presents an able motion for rehearing urging the lack of sufficient testimony; also a supplemental motion urging that in regard to the other matters we were wrong in our original opinion. In the latter he first insists that the trial court erred in excusing nine jurors on the ground that they had sat in a companion case against appellant in which the issues were the same, and had returned a verdict of acquittal. Appellant insists that this action of the court was based on a wrongful assumption without proof to support it. Looking to the record, we note that when this case was called for trial,—manifestly before any question of the jury could have arisen,—appellant presented to the court his plea of former acquittal, alleging that the offense for which he was about to be tried, and the offense charged in indictment No. 6348, upon which he had just been tried and acquitted, were one and the same offense, and rested on substantially the same proof. This plea being overruled, and both parties then announcing ready, the question raised in appellant's bill of exception No. 11, towit, the excusing of said jurors, was passed upon by the court, and, as stated in his qualification to said bill, the state having practically conceded that the said jurors sat in a case "where the same culpable facts would occur," we thought when we wrote originally and still think it proper for the court to excuse said jurors. No complaint of any juror who sat on the trial of the case appears.

Appellant being charged with theft of but one head of cattle, the property of Jack Wheeler, and the testimony showing that possession of but one of the three cattle lost by Wheeler at said time was ever traced to appellant's possession,—there can be no question of the correctness of the ruling of the trial court in refusing to notice appellant's contention that the state should have been required to elect as between cattle or transactions. The matter needs no discussion or citation of authorities. We can not conceive how there could be similarity or aptness in the case of Mazureczk v. State, 128 S. W., 136,

wherein the allegation was of theft of three sheep and the proof showed theft of six sheep, and possession by the accused of six sheep.

Appellant's wife having sworn that, if the alleged stolen red heifer was in fact found in her husband's possession, it was put in the pen by her brother Sirmon; and Spleetosser having sworn that on the afternoon before the officers so found said stolen heifer in appellant's pen, he saw appellant and one of the Sirmon boys driving three head of red cattle up to appellant's place, it was proper for the court below to submit the case on the law of principals.

The charge on alibi was in form which has often been approved. Nichols v. State, 91 Texas Crim. Rep., 277; Hunt v. State, 85 Texas Crim. Rep., 622; Soria v. State, 83 Texas Crim. Rep., 343.

The sufficience of the facts is peculiarly for the jury. Two neighboring negroes seem to have lost cattle about the same time. Both of these men have died since such alleged loss. The case here involved charged the theft of one red heifer belonging to Jack Wheeler. Said animal disappeared Wednesday or Thursday and was found in an enclosure near appellant's house Friday night. As far as we are informed by the record, the nearest residence, aside from that of Spleetosser, was a mile from the residence of appellant. The animal's ears had been cut, and its mark defaced. According to three state witnesses appellant's wife demanded that the officer not take said alleged stolen cattle, that they were hers, bought with her money. Appellant was at home with his wife when the officers arrived. Apparently no one else was there save appellant, his wife, and their children, to whom she referred in her testimony as "My babies." She also swore that appellant left their home with two other men, whom she said were present as witnesses, on Thursday afternoon to go to Houston, and that appellant did not get back until 10 o'clock Friday night. None of the parties referred to testified for the defense on this trial. Officers seem to have been on the road over which she said appellant came home Friday night at or about the time he should have come along. They testified that no truck passed them. Appellant's brother lived about a mile from him. We think it not necessary to further state the testimony. The presence of no other person at the home of appellant when the cattle were found on the night of their discovery, save as above indicated, fully appears. The case does not rest on the fact alone of the finding of the cattle in appellant's lot.

We think the original opinion correct, and the motion for rehearing is overruled.

*Overruled.*