No. 31,037

THE STATE OF KANSAS, *Appellee*, v. BILL WRIGHT, *Appellant*.

(23 P. 2d 475.)

Opinion filed July 8, 1933.

*A. D. Weiskirch, Jr.,* of Topeka, for the appellant.

*Roland Boynton,* attorney-general, *E. E. Steerman,* assistant attorney-general, *Joseph J. Dawes,* county attorney, and *F. C. Bannon,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The appellant, Bill Wright, was convicted of the crime of robbery in the first degree as charged in four counts of the information.

The evidence tending to support the conviction was to this effect: One Warden operated a small confectionery and filling station on highway No. 40, in Leavenworth county, a few miles east of Tonganoxie. On the night of April 18, 1931, several persons were playing cards in Warden's place of business. About midnight three strangers, afterwards identified as Bill Wright, Jack Boaz and one Stanley, entered the confectionery with the avowed purpose of getting warmed. They purchased cigarettes, watched the card game in progress, stayed for an hour or more, and then left. Shortly thereafter they returned with guns in their hands. One of the three commanded those present to "stick 'em up." One of the trio searched the pockets of the card players and ordered Warden to put his money on the table. Various sums of money were thus taken from Warden and the players; and the several counts of the information related to the specific acts of robbery committed against Warden and these other persons.

Appellant contends that he was not sufficiently identified as one of the robbers, and that the trial court's instruction touching an alibi interposed in his behalf was inaccurate and prejudicial.

Touching the first of these points Warden, proprietor of the confectionery, narrated the facts of the robbery, and on the matter of identification his testimony reads:

"Q. Mr. Warden, you see Bill Wright here? A. Yes, sir.
"Q. Was he in your place that night? A. Yes, sir.
"Q. Was he one of the men who came in there with a gun? A. Yes, sir.

"Q. You are sure about that? A. Absolutely.

"Q. How long was it after that time that you next saw Bill Wright? A. About three weeks after that.
"Q. And who was with him at that time? A. Well, there was Mr. Boaz and Mr. Stanley.

"Q. Where did you see them? A. Well, I seen them at Woods' corner. I went down there to see if they were the same fellows that robbed me; they asked me to come.
"Q. Were they the same men? A. Yes."

Defendant stresses the fact that on cross-examination this witness was unable to state how defendant was clothed, whether he wore a jumper, what was the color of his shoes, and whether he wore a necktie. However, the state prints some more of this cross-examination:

"Q. What color hair did he have? A. Black.
"Q. What color eyes? A. Black eyes.

"Q. About how old? A. Oh, I judge he was around thirty or thirty-five.
"Q. Was he heavy or light? A. Oh, he was kind of a slim fellow.
"Q. Rather slender? What would he weigh? A. Oh, I judge around 140 or 150.

"Q. You could not tell a thing he wore, could you? A. He wore some old clothes.

"Q. And that is the way you try to identify this boy, is it not? A. Oh, I know him. I watched. I seen him when he held that gun on me. I looked him in the eye. I never would forget him."

Other witnesses for the state who were victims of the acts of robbery charged in the information were not able to identify defendant because they were compelled to face about while the robbers went

through their pockets and gathered up the money on the card table. Some of them, however, did identify one or both of defendant's companions, although they were uncertain about defendant. Thus, witness Hastings testified:

"Q. Would you say in your judgment this boy was not one of the three boys that was there? A. I could not say that he was or I do not know as I could say that he was not.

. . . . . . . . . . . . . . .

"Q. Why? A. Well, he is better looking, a better-looking man. That gentleman fixed up—he looks like a gentleman. . . . That night I seen him out there he was a very tough-looking character."

In such a state of the evidence any court of justice would be derelict of its duty if it should hold that the matter of defendant's identification was not sufficiently established to take the case to the jury.

Error is predicated on the giving of this instruction:

"You are further instructed that one of the defenses made by the defendant in this case is what is known as an alibi, that is, that the defendant was in another place at the time of the commission of the crime. This is a proper defense, *if proven;* and if, in view of all the evidence, the jury have a reasonable doubt as to the presence of the defendant at the time when and the place where the crime was committed, they should give the defendant the benefit of the doubt and find him not guilty. The defendant is not required to prove an alibi beyond a reasonable doubt or even by a preponderance of evidence. It is sufficient to justify an acquittal if the evidence upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged, if you find that a crime was committed. You will understand, also, that the attempt of the defendant to prove an alibi does not shift the burden of proof from the prosecution, but that the prosecution is bound to prove this defense should be subjected, like all the evidence in the case, to rigid scrutiny, for the reason that witnesses, even when truthful, may be honestly mistaken of, or forgetful of times and places."

Defendant criticises the inclusion of the words "if proven" which we have italicized in the instruction quoted. The criticism is just. Under the law of alibi, as otherwise correctly stated in this instruction, defendant was not required to *prove* his defense of alibi. It would quite suffice under Kansas law for defendant's acquittance if the evidence offered in support of his defense of alibi raised a reasonable doubt of the verity of the state's evidence that he was present at the time and place the crime was committed. In *State v. Conway*, 55 Kan. 323, 40 Pac. 661, it was said:

"It [an alibi] is a legitimate defense, and the instructions requested to the

effect that the accused is not required to establish the defense beyond a reasonable doubt, or even by a preponderance of the testimony, to entitle him to an acquittal, correctly stated the law. . . . and if, by reason of the evidence relating to that question, the jury should doubt the guilt of the accused, he is entitled to an acquittal. . . . the defendant is not obliged to absolutely show the truth of the claim, nor are the jury required to believe that the proof establishes an alibi in order to acquit. The evidence may be such as simply to raise a reasonable doubt of guilt, and in that event the defendant may be acquitted. (*State v. Child,* 40 Kan. 482.)" (p. 325.)

We do not fail to note that the instruction which the trial court gave is taken from our own reports. It appears in *State v. Smith,* 114 Kan. 186, 217 Pac. 307, where it was tacitly approved, without discussion, on authority of *State v. Price,* 55 Kan. 610, 40 Pac. 1001. In the latter case the instruction reads:

"One of the defenses made by the defendant in this case is what is known as an alibi; that is, that the defendant was in another place at the time of the commission of the crime. This is a proper defense, if proven; and if, in view of all the evidence, the jury have a reasonable doubt as to the presence of the defendant at the time and place when the crime was committed, they should give the defendant the benefit of the doubt, and find him not guilty."

But this court did not give its unqualified approval of the language "This [alibi] is a proper defense, if proven." What we did say was this:

"It would be hypercritical to hold this instruction erroneous merely because a disconnected portion of a sentence would be erroneous standing by itself." (p. 611.)

We still say so, but we would add that in searching our reports for suitable instructions to fit pending cases, it would be well for courts and counsel to look closely to the context to determine whether this court has deliberately approved them as precise and well-stated rules of law, or merely not so lacking in precision and comprehensiveness as to compel this court to declare them to be erroneous and prejudicial. Here, as in *State v. Price,* supra, we hold that while the words "if proven," should have been omitted, the instruction as a whole was not prejudicially misleading; and as the record does not permit this court to entertain any misgiving that justice may have miscarried, the judgment is affirmed.