STATE OF IOWA, appellee, v. RONALD MAURICE STUMP, appellant.

No. 50605.

(Reported in 119 N.W.2d 210)

1184

JANUARY 15, 1963.

REHEARING DENIED MARCH 14, 1963.

J. R. McManus, of Des Moines, for appellant.

Evan Hultman, Attorney General, John H. Allen and David E. Byers, Assistant Attorneys General, and Harry Perkins, Jr., County Attorney, for appellee.

SNELL, J.—Defendant, Ronald Maurice Stump, was indicted by the grand jury of Polk County for "Murder in the First Degree as defined in sections 690.1 and 690.2 of the 1958 Code of Iowa * * *." The indictment charged that defendant "did with malice aforethought, premeditation, deliberation and intent to kill, murder Michael Daly in Polk County, Iowa." Defendant was represented by able, experienced and resourceful counsel of his own choice. The indictment was followed by defendant's motions to require a physical examination of a State witness; motion to set aside and quash indictment; demurrer to indictment; application for bill of particulars; motion to require the State to plead responsively to defendant's motions; petition for production of books and papers; and a plea of not guilty. Prior to trial defendant, through counsel, gave notice of reliance on the defense that he was at some other place at the time of the alleged commission of the offense; a defense commonly known as an alibi.

Trial to a jury resulted in a verdict of guilty of murder in the second degree. The usual motions to direct a verdict, in arrest of judgment and for new trial were made and overruled. From judgment of imprisonment pursuant to Code section 690.3 defendant has appealed.

I. Pursuant to section 793.18, Code of Iowa, we have examined the record without regard to technical errors or defects which do not affect the substantial rights of the parties in order that there may be such judgment on the record as the law demands. It is our duty to determine whether or not defendant has had a fair trial; review questions of law and procedure; determine whether proper evidence has been admitted and improper evidence rejected, and whether there is evidence to support issuable questions of fact determined by the jury. It is not for us to pass upon or decide issuable questions of fact properly submitted to the jury. Under our Constitution and statutes that is what juries are for.

Detailed recitation of voluminous testimony admitted for consideration by the jury but not germane to our problems is not necessary.

We have examined the entire record, replete with objections made and exceptions taken, but will within reasonable limitations confine our discussion to the matters argued and claimed to be error.

Defendant was 22 years old at the time of trial. He had graduated from college with honors. In June 1961 he was employed in Des Moines. While in college in 1959 and 1960 he met, dated and became engaged to marry Leanna Skultety. As time passed Miss Skultety concluded that they were incompatible in some things, particularly in religion. Her ardor cooled and she broke the engagement. Defendant was not easily discouraged and persisted in his efforts to gain the young lady's favor. He had little success.

In January 1961 Miss Skultety met and began dating regularly Michael Daly. They became engaged to marry in February 1961. Faced with such upsetting developments defendant obtained and showed to Miss Skultety a derogatory report on Michael Daly. Defendant's dissuasive efforts did not prevail.

On the evening of June 9, 1961, Daly and Miss Skultety were together in her car. After driving around they stopped in front of the home of Daly's parents. Miss Skultety testified that another car had been following them. A man identified by Miss Skultety as defendant got out of the other car. Daly and Miss Skultety got out of her car. She testified that she heard a noise, turned and saw defendant shoot Daly; that Daly fell toward the back of the car; that defendant walked closer, stood over him and fired. She screamed, heard footsteps, heard and saw the other car go. She ran into the house and called Michael Daly's father. An ambulance and the police were called and the alarm for the apprehension of defendant was sounded. Daly died in the hospital a few hours later as a result of a gunshot wound in his head. The murder weapon was never produced.

Miss Skultety was the only eyewitness to the shooting. Her identification of defendant as the assailant was positive and unequivocal.

Other witnesses testified as to defendant's presence in the neighborhood, hearing shots sounding like firecrackers, and

seeing the departing car. There was disagreement among the witnesses as to the description of the departing car. There was ample evidence identifying defendant as the assailant to support a jury verdict. The extensive testimony, derogatory in nature, relative to the prior conduct of the three principals in this tragic love triangle need not be repeated here.

Defendant was taken into custody in Ottumwa on the morning of June 10. He was at the home of a relative with whom he had spent at least the latter part of the night.

Defendant testified that between 7:30 and 8 p.m. on June 9 he started for Ottumwa. This was prior to the shooting. He said he arrived in Ottumwa between 10 and 10:30. Defendant called a number of witnesses who testified as to his activities and their own observations and time and distance computations to show that defendant could not have been present at the time and place of the shooting.

II. Defendant called as a witness in his behalf John Moody, at the time of trial a deputy sheriff, but at the time of the shooting a life insurance agent. The witness testified that on June 9, 1961, he had dinner with Michael Daly and another man and at that time took from Daly an application for $10,000 life insurance naming Daly's father as beneficiary. The premium was not paid, the transaction never consummated and the policy never issued. During the conversation "there was some mention" of Leanna Skultety.

At this point counsel for the State objected to the testimony and on motion the Court struck the testimony as immaterial.

Later defendant made an offer of proof, in the absence of the jury, that in the conversation between Daly and witness Moody, Daly said "he had Leanna Skultety pregnant, that she was then pregnant three months and that he guessed he was going to have to marry her." The offer of the testimony was refused. The rulings were proper.

█ Testimony that at dinner time Daly signed an application but did not pay for life insurance payable to his father was wholly immaterial as a defense to the charge that later that evening he was shot by defendant.

█ Statements by Daly that he had Leanna Skultety

pregnant were properly rejected. They had no probative value whatsoever except possibly to prove motive in defendant as a rejected suitor. That would not help the defense. The fact that Leanna Skultety was pregnant by Daly was not in issue and was no secret. She had so testified in direct examination as a State's witness.

Defendant's argument that the evidence about an unconsummated application for insurance was material in that it would permit the jury to draw the inference that the victim's father might have a motive for killing his own son is not persuasive. Evidence tending to incriminate another must be confined to substantive facts and create more than a mere suspicion that such other person committed the offense. State v. Rosenberg, 238 Iowa 621, 625, 27 N.W.2d 904. If the credibility of Leanna Skultety was to be weakened by evidence of her pregnancy that purpose had been accomplished by her own admission long before defendant's offer of testimony. The argument does not merit further discussion.

Defendant argues that objections to the testimony and offer of proof were not sufficiently complete or timely.

State v. Bales, 251 Iowa 677, 681, 102 N.W.2d 162, 165, quotes with approval from 22 C. J. S. The statement quoted now appears with only slight change in 22A C. J. S., Criminal Law, section 740, as follows:

"The person injured by the crime, whether alive or dead, is in no sense a party to the prosecution, and therefore, as a general rule, his statements and declarations are not evidence either for or against accused, unless they are relevant on the question of accused's guilt and were made in his presence, or unless they are admissible as part of the res gestae * * * or perhaps as threats * * *. Such testimony is generally inadmissible as hearsay."

State v. Bales on page 682 Iowa Reports also says:

"The rule is well established in this jurisdiction that, although an insufficient objection is interposed, if the court sustains the same and there was in fact a good and sufficient objection to the reception of the evidence, there is no reversible error. In re Will of Smith, 245 Iowa 38, 46, 60 N.W.2d 866,

and cases cited therein. In re Will of Crissick, 174 Iowa 397, 416, 156 N.W. 415, 422, often referred to as ably stating the rule, it was said: 'If matter is, in fact, objectionable * * * it does not matter that objection was not more specific, or that none was interposed. * * * But, where the court sustains an objection, and there are, in fact, good grounds for so doing, there will be no reversal because good reasons or full reasons were not presented below.' "

Defendant argues that a litigant may not wait for answers which are responsive to questions asked without objection, and then, if the answer is unsatisfactory, have it stricken from the record. Assuming, arguendo, that is the law it does not follow that a trial court must sit idly by and permit the incumbering of the record with immaterial and hearsay evidence or that there is reversible error when such matter is stricken.

The contentious reaction of defendant's counsel to adverse rulings was followed, outside the presence of the jury, by an acrimonious colloquy; a rhubarb. It illustrated what was obvious and inevitable. The Court and counsel did not see eye to eye on the admissibility of testimony. The fact that the trial court, in camera, expressed a low regard for the probative value of some testimony and that counsel reacted against restraint is no ground for reversal.

III. Defendant called as a witness Charles E. Hosier. The witness had been called to the hospital because of an accident to his brother. In the waiting room he saw a Mrs. McManigal, her daughter Constance, Leanna Skultety, Mrs. Skultety and another lady who might have been Mrs. Daly. He saw Leanna Skultety talking to Mrs. McManigal but did not hear anything said at that time. He then repeated statements allegedly made to him by Mrs. McManigal. Leanna Skultety was not in the conversation. She was seated some distance away. There is no claim that she was being quoted. There is nothing but a possibility that she even heard what was said.

Mr. Hosier, referring to Mrs. McManigal, testified:

"Q. Now, will you repeat the conversation that you heard at that time? A. She said, 'Isn't this terrible that them being brothers,' then she went on to tell me that they were, explained

how nice boys they were but they had been drinking, and she said, 'It is going to be awfully hard on the family.'

"Q. And, is that about all that you can remember? A. Yes, sir, outside of her explanation about their going to school and being such good boys."

The testimony was objected to and later stricken. There was no error.

Mrs. McManigal was not called as a witness at the trial. There is no claim that she was quoting anyone and her comments under the circumstances were neither a part of the res gestae nor connected with anything shown to be part of the res gestae. She was merely expressing her own reaction to a tragedy. Mr. Hosier's testimony as to what Mrs. McManigal may have said was irrelevant to the issues on trial, hearsay, not within any exception to the hearsay rule and clearly within the trial court's discretionary power of exclusion.

IV. Defendant urges error in the admission over objections of the testimony of police officers concerning alleged conversations with defendant while under arrest and in custody and in failing to grant a mistrial after admitting such testimony.

Allen Simmons, a Des Moines police officer assigned to the Detective Bureau, went to Ottumwa with two other officers on June 10, 1961, to take defendant into custody. The officer testified as to a conversation with defendant while returning to Des Moines and as to his own investigations. The officer did not relate any incriminating admissions by defendant. He did quote defendant as saying " 'I did not shoot at her' " referring to Leanna Skultety. Witness was then asked, "Did you have any other conversation with him that you can recall?" He answered, "In response to his statement that, after that, that he did not wish to discuss the matter any further until he talked to an attorney, I told him that was his legal right, that he didn't have to answer any questions."

There is no claim by the State that police officers ever gave defendant any formal notice of his rights under the Constitution of the United States or the Constitution of Iowa.

Upon defendant's arrest his father, very properly, hur-

ried to his aid. Father and son counseled together at the county jail before the conversations with officers to which defendant objects. Defendant's father testified, "I talked with him. I asked him about things in general and wondered what was up and I advised him not to talk without an attorney, and I also told him to watch these boys or they will try to trick you into some admission." We thus have a situation where defendant was warned by his father; he refused to discuss the matter "any further until he talked to an attorney"; and was told by the police officer "that he didn't have to answer any questions." Defendant was a graduate of the State University, elected to the honorary fraternity Phi Beta Kappa, a member of the university debating team, president of the University Forensics Association and Delta Sigma Rho, honorary speech fraternity. With this background, warning, and evidence of awareness it would be most naive to conclude that defendant was surreptitiously tricked into admissions by the superior intelligence of police officers. Defendant was aware of his rights. His statements are presumed to be voluntary. State v. Kelley, 253 Iowa 1314, 1325, 115 N.W.2d 184, 190.

Gerald Limke, a police officer, testified concerning a conversation with defendant at the city jail on June 11. We quote from the record:

"Q. Can you tell us some of the remarks that the defendant made to you? A. We talked of the shooting of Mr. Daly. I asked him if he felt any remorse about Mr. Daly's death.

"Q. What answer did he make to that remark? A. He answered 'People like Daly either should be dead or belong dead.'"

■ That one accused of crime may refuse to answer questions and that he is entitled to the aid of counsel is so firmly ingrained in our law as to be axiomatic. 5th Amendment, 6th Amendment and 14th Amendment, Constitution of the United States. Article I, sections 9 and 10, Constitution of the State of Iowa. Evidence obtained by illegal search and seizure is not admissible. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081.

■ Evidence of statements obtained by force or duress is not admissible but "The sole test in this state as to the admissi-

bility of inculpatory statements or confessions is: Were the same voluntary or not?" State v. Beltz, 225 Iowa 155, 163, 279 N.W. 386, 390. See also State v. Mikesh, 227 Iowa 640, 644, 288 N.W. 606. Defendant does not argue that the statements, if made, were not voluntary.

Error is claimed and based on the assertion that defendant was never advised of his constitutional rights or his right to remain silent. The premise from which defendant argues is unsound factually and legally. Defendant knew of his rights and asserted them. He was told "that he didn't have to answer any questions." See Division IV, supra.

In Iowa advice as to constitutional rights is not a prerequisite to admissibility of evidence of inculpatory admissions.

In State v. Beltz, supra, on pages 162 and 163 of Iowa Reports, it is said:

"We have no statute in the State of Iowa requiring police officers to warn persons in custody that all statements made by them will be available to the prosecution in the trial of a case. Ordinarily in the absence of such a statute, there is no duty on the part of law-enforcing officers to so caution prisoners, and statements or confessions made without such cautioning or warning are admissible in evidence."

In State v. Marcus, 240 Iowa 116, 121, 34 N.W.2d 179, 182, it is said:

"Complaint is made of the overruling of objections to questions propounded police officers concerning statements and admissions of defendant when first called to the police station. The statements appear to have been voluntary. Defendant points out he was not cautioned or warned they might be used against him. This would not make them inadmissible."

See also State v. Benson, 230 Iowa 1168, 300 N.W. 275, and State v. Cameron, 254 Iowa 505, 512, 117 N.W.2d 816, 820.

V. Defendant vigorously attacks the Court's instruction on alibi and the Iowa rule under which it was given. It has been admitted that the instruction as given is in accord with well established Iowa law.

The Court instructed as follows:

"It is the claim of the defendant that at the time of the

shooting of Michael Daly referred to herein he was on the highway between Des Moines and Knoxville, Iowa, and consequently that he could not have committed the offense charged herein or either of the included offenses. He seeks to establish this claim by a witness or witnesses who have testified herein and also by his own testimony. This defense is commonly known as an alibi.

"The defendant has the burden of establishing this defense by the greater weight of the evidence bearing upon it, and before you can acquit the defendant by reason of this defense you must find that he has established it by a preponderance or greater weight of the evidence bearing upon it. If he has established by the greater weight of the evidence that he was on the highway between Des Moines and Knoxville, Iowa, at such a distance from Des Moines that he could not have committed the crime charged herein, you should return a verdict of not guilty.

"If the defendant has failed to establish this defense by a greater weight of the evidence you should still consider the evidence which has been introduced in support thereof, and if, after considering the case as made as a whole, including this evidence, you entertain a reasonable doubt as to his having committed the offense charged or either of the included offenses herein, you should return a verdict finding the defendant not guilty.

"You will understand that the burden of proof referred to in this paragraph rests upon the defendant only as to the proof that he was on the highway between Des Moines and Knoxville, Iowa, at the time the shooting occurred and at such a distance from Des Moines that he could not have been the person who did the shooting. By reason of this burden resting upon him, he is not bound or required to prove his innocence as to the whole case, for the burden of proof rests upon the State as to the case as a whole to prove the defendant guilty beyond a reasonable doubt before a verdict of guilty on any of the charges included herein can be returned against him."

It has long been recognized in the law that the defense of alibi is one easily manufactured. State v. Blunt, 59

Iowa 468, 13 N.W. 427; State v. Rowland, 72 Iowa 327, 33 N.W. 137; State v. Leete, 187 Iowa 305, 309, 174 N.W. 253; State v. Johnson, 221 Iowa 8, 20, 264 N.W. 596, 267 N.W. 91.

The ease with which an alibi defense can be manufactured would in the absence of proper safeguards enable an unscrupulous defendant to overwhelm the prosecution in almost every case where the defendant was not caught in the commission of the offense. In order to protect society against such easily manufactured surprise testimony our legislature enacted in 1941 what is now section 777.18, Code of Iowa. This statute provides that where a defendant pleads not guilty and relies on an alibi or that he was at some other place at the time of the alleged commission of the offense charged he shall give notice setting forth the names of the witnesses, together with the address and occupation of each, and the substance of what defendant expects to prove by each.

Defendant gave the notice required by the statute. His alibi witnesses were called and testified.

In the trial of a criminal case a defendant is not required to do anything. Even though he elects to do nothing the prosecution in order to convict must establish defendant's guilt beyond a reasonable doubt. This burden on the prosecution never shifts. It remains throughout the trial as a shield for defendant. Even in the absence of the alibi notice required by section 777.18, Code of Iowa, defendant may take the witness stand and testify to all material and relevant matters. He may testify that he was so far away and at such a specified place that he could not have been present at the scene of the crime. Such testimony thus presents the question of credibility for determination by the jury with the burden still resting on the prosecution. If the defendant voluntarily elects to go further and call witnesses to testify in support of his alibi he must then give the notice required by statute. He assumes the offensive. He offers witnesses to testify that he could not possibly have committed the offense because he was too far away. This goes only to the testimony that he was at some specific place. If established it constitutes an absolute defense. To the extent that it may be an absolute defense it is affirmative in nature. Even though

not affirmatively established it is still defensive against the prosecution's burden of establishing defendant's guilt beyond a reasonable doubt.

This is exactly what the trial court told the jury. It is in strict accord with the law of Iowa.

■ The issue of alibi is an affirmative defense and when asserted the burden of proof by a preponderance of the evidence rests upon the defendant. State v. Leete, supra; State v. Worthen, 124 Iowa 408, 413, 100 N.W. 330; State v. Rourick, 245 Iowa 319, 323, 60 N.W.2d 529.

Defendant did not have to prove his innocence. The State had to prove guilt beyond a reasonable doubt. In order to do so the State had to prove that defendant was at the scene of the shooting at about 8:30 p.m. June 9, 1961. When defendant attempted to prove the impossibility of the State's claim by showing that he was on his way to Ottumwa the burden was on him to prove by a preponderance of the evidence that he was actually on his way to Ottumwa.

Even though defendant did not meet this burden the evidence still inured to his benefit as the jury was instructed to consider it in connection with the whole case.

The Iowa law as outlined in the trial court's instruction is well established by a long line of decisions from which there has been no deviation. The rule is logical and sound.

Defendant argues with skill and thoroughness that an alibi is not an affirmative defense. He points out the distinction between an alibi and insanity or self-defense. Authorities from many jurisdictions are cited. The rules of criminal procedure are not the same in all jurisdictions. Our rules are, as they should be, designed for the protection of the innocent, without at the same time making the conviction of the guilty impossible. We are not disposed to deviate from our well established and in our opinion sound rules.

With all due respect for the pronouncements of other courts we adhere to our own precedents as the sound answer developed from our own legal premises.

Our statutes and rules of evidence and procedure are not sacred. Neither are they immune from attack. It is well that

they be reviewed from time to time. It should, however, be kept in mind that a lawsuit whether it be civil or criminal is essentially a search for the truth. Our Rules of Procedure should be vehicles for and not barricades to the truth. Our rules are proper aids to juries in their ultimate responsibility and are neither oppressive nor suppressive.

VI. Defendant argues that the assistant county attorney was guilty of prejudicial misconduct in his closing argument to the jury. Excerpts from the argument appear in the record. What defendant's counsel said in argument does not appear. In the record before us we find no error in the court's rulings. Where the argument for the defendant is not before us the argument for the State is presumed to be in response thereto. If responsive it was not error. State v. Latham, 254 Iowa 513, 117 N.W.2d 840. See also State v. Thompson, 254 Iowa 331, 341, 117 N.W.2d 514, 519, 520.

In State v. Case, 247 Iowa 1019, 1029, 1030, 75 N.W.2d 233, 240, it is said:

"We have frequently held that where the arguments for defendant are not preserved it will be presumed, where nothing to the contrary appears, the reply argument was a legitimate response to argument for defendant. [Citations] * * *

"Misconduct of counsel does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. [Citations]

"24 C. J. S., Criminal Law, section 1902a, pages 896 to 898, states: 'A cause will not necessarily be reversed because of alleged misconduct of counsel. On the contrary, appellate courts are strongly inclined against setting aside convictions because of misconduct of counsel. * * * Misconduct of counsel is generally regarded as harmless and not cause for reversal where it has not resulted in depriving accused of a fair trial, or in a miscarriage of justice * * *.'

"A fair trial does not necessarily mean an absolutely perfect one. * * *

"We have repeatedly pointed out the trial court is in a much better position than we are to judge whether claimed misconduct of counsel is prejudicial. At least considerable dis-

cretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of such discretion."

Defendant's contention is without merit. We do not agree with the statement of defendant's counsel that " this court has been a little weak-kneed on these matters in the past." Counsel's comment is perhaps inspired by appreciation of weakness in his own position. It is not unusual in the defense of felony cases for counsel to dislike all rules except those that lead inevitably to acquittal of the accused.

■■ ■■ VII. Defendant claims error in sustaining section 777.18 (alibi statute) against constitutional attack; in failing to require the State to give defendant information about rebuttal evidence and in permitting certain rebuttal witnesses to testify. Defendant cites no direct authority in support of his position. The Iowa cases decided under the statute appear to assume rather than decide its constitutionality.

No presumption against constitutional validity can be indulged. Every reasonable presumption must be called to support the act. Iowa Hotel Association v. State Board of Regents, 253 Iowa 870, 114 N.W.2d 539, and citations.

The State cites Underhill's Criminal Evidence, Fifth Ed., Volume 2, section 440, as follows:

"While the defense of alibi is 'an institution of dignified age', it is sometimes said that it is conducive to the manufacture of evidence, and a few states have passed statutes known as Alibi Acts. These provide in general that the defendant must give notice of his intention to rely on an alibi, and that if he fails to do so his evidence on the point may be rejected. *Such statutes are constitutional,* and it has been held that where the notice was not given the defendant's alibi testimony was properly excluded." (Emphasis added.)

Defendant in his Reply Brief and Argument attacks this citation as an omnibus, broad statement unsupported by judicial precedent.

We think the quoted statement is sound.

There is nothing essentially unconstitutional about requiring pretrial disclosure of the names of witnesses whose testi-

mony the other side may be called on to refute. The modern trend in discovery is to broaden access to material facts and reduce belated surprise.

In Iowa the State must furnish defendant with the names of witnesses to be called in chief and defendant may obtain the substance of the evidence he must face. Unless defendant relies on insanity or alibi he need not disclose the names of his witnesses and then only as required by the alibi statute. To rebut the testimony of defense witnesses the State may call additional witnesses. Their testimony however must be limited to rebuttal. We see nothing unfair nor violative of due process of law in this procedure.

VIII. Upon arraignment defendant filed a motion to set aside and quash indictment. The motion is in ten numbered paragraphs but is based primarily on the allegation that the names of all persons examined before the grand jury were not indorsed on the indictment and that unauthorized persons were in the grand jury room.

Many persons were examined before the grand jury. Not all of those examined were listed on the indictment.

Section 776.1, Code of Iowa, provides that a motion to set aside indictment can be made upon several grounds. One of the grounds is that the names of all witnesses examined before the grand jury are not indorsed on the indictment. Subsequent sections in chapter 776 provide for corrections to an indictment so attacked or resubmission. The practical effect of the statute is to prevent the calling of witnesses (except in rebuttal) without notice to defendant. Section 780.10.

We have held repeatedly that the law does not require the indorsement on an indictment of the name of a witness appearing before the grand jury, if, in their opinion, the testimony given was immaterial. Only the names of the witnesses on whose testimony the indictment is based need be indorsed thereon. State v. Stafford, 237 Iowa 780, 782, 23 N.W.2d 832; State v. Hasty, 121 Iowa 507, 511, 96 N.W. 1115; State v. Davis, 230 Iowa 309, 312, 297 N.W. 274; State v. Martin, 210 Iowa 376, 379, 228 N.W. 1.

IX. Defendant claims error in denying his application for

a bill of particulars, the production of books and papers, copies of statements and testimony before the grand jury.

The trial court did order production for examination all documents, photographs and exhibits used in conjunction with the testimony of any witness whose evidence was attached to the indictment, together with statements given to the police by Leanna Skultety. By agreement defendant was also authorized to examine photographs and a diagram.

We have examined defendant's motions, the extensive minutes attached to the indictment and the trial court's analysis and rulings thereon. Detailed discussion here would serve no useful purpose. Some of the information sought appears in the minutes. Some is nonexistent. The things to which defendant was entitled were furnished. Parts of the motions constituted an obvious "fishing expedition." Our examination discloses no error.

Defendant cites, among other authorities, Jencks v. United States, 353 U. S. 657, 77 S. Ct. 1007, 1 L. Ed.2d 1103.

The significance and impact of the Jencks case on our law is considered in State v. Kelly, 249 Iowa 1219, 1221, 1222, 91 N.W.2d 562, 563. We quote:

"The defendant contends denial of these motions was error, basing his claim chiefly upon Jencks v. United States, 353 U. S. 657, 669, 77 S. Ct. 1007, 1 L. Ed.2d 1103. While the defendant's motion first above referred to claimed a right to inspect the demanded writings under the 'due process of law', we are satisfied the United States Supreme Court has not placed its holdings upon that basis. It has adopted a rule of evidence. In Gordon v. United States, 344 U. S. 414, 420, 73 S. Ct. 369, 374, 97 L. Ed. 447, it is said: 'The question to be answered on an application for an order to produce is one of admissibility under traditional canons of evidence * * *.' Mr. Justice Clark, dissenting in the Jencks case, remarked: 'This fashions a new rule of evidence which is foreign to our federal jurisprudence.' See page 680 of 353 U. S., page 1019 of 77 S. Ct. Reference is also made in the Gordon case, page 418 of 344 U. S., pages 372, 373 of 73 S. Ct., to opposite rules followed in some state jurisdictions, without any intimation that such courts are bound by the federal

holdings. In fact, the entire picture presented by the Jencks and Gordon cases is that under certain conditions and with certain limitations the defendant is entitled as a matter of procedural right to inspect documents for the purpose of possible impeachment.

 "The significance of the foregoing discussion lies in the fact that if the Jencks case were based upon the due process clause of the Federal Constitution, as suggested by the defendant, it would be binding upon state courts; if based upon a rule of evidence or procedure it is not. As we view the matter we are not bound to follow the Jencks case, but may determine for ourselves, when the question is directly presented, whether we will do so.

 "But this decision is not required at this time. Even under the Jencks case the ruling of the trial court was correct. The essential requirements for an order to produce documents for inspection are thus stated: 'The necessary essentials of a foundation, emphasized in that opinion [Gordon v. United States, supra], and present here, are that "the demand was for production of * * * *specific documents and did not propose any broad or blind fishing expedition* among documents possessed by the Government on the chance that something impeaching might turn up. Nor was this a demand for statements taken from persons or informants not offered as witnesses." ' The emphasis was added by the court in the Jencks case in quoting from the Gordon case. See Jencks v. United States, supra, pages 666, 667 of 353 U. S., page 1012 of 77 S. Ct. It also appears that the demand must be for documents shown to be in existence. Gordon v. United States, page 418 of 344 U. S., page 373 of 73 S. Ct. * * *

"We recognize the force of the statement quoted by the defendant from the majority opinion in the Jencks case: '* * * the interest of the United States in a criminal prosecution "* * * is not that it shall win a case, but that justice shall be done." ' This does not mean, however, that the scales must be weighted in favor of the defendant. The prosecution has certain rights which should be respected; it is equally entitled to a fair trial."

X. Defendant claims error in submitting second-degree murder to the jury. He argues that whoever shot Michael Daly was guilty of first-degree murder and must be so convicted or acquitted.

Defendant cites numerous decisions but only one Iowa case in support of his position. State v. Bertoch, 112 Iowa 195, 83 N.W. 967. That case is of little value here for it involved murder by poison. Murder by poison is by specific provision of the statute made murder in the first degree.

We agree with defendant's counsel that whoever shot Michael Daly might under the evidence have been convicted of murder in the first degree. Under the record the jury might have found defendant guilty as charged.

Under the statute, section 690.1, whoever kills any human being with malice aforethought, either express or implied, is guilty of murder. Section 690.2 sets forth additional essential elements which if established would raise the murder to first degree. The basic charge is murder. If murder is established the question is whether the specific elements required by statute to raise the offense to first degree have been established. All murder except as specified in section 690.2 is second-degree murder. Section 690.3.

The jury obviously was convinced defendant was guilty of murder. There may have been some doubt, resolved in favor of defendant, as to some of the essential elements necessary for conviction of first-degree murder. The jury might even have been inclined to exercise some degree of leniency. We may not interfere in either event. In any event under the evidence as shown by the record murder in the second degree was necessarily an included offense in the charge of murder in the first degree.

Murder in the first degree and murder in the second degree are not separate offenses. They are different degrees of murder.

State v. Davis, 236 Iowa 740, 749, 750, 19 N.W.2d 655, 659, sets forth the rules and authorities as follows:

"In the case of State v. Brooks, 181 Iowa 874, 880, 165 N.W. 194, 196, we set forth the basis upon which included offenses should be submitted to a jury, and stated:

" 'On the other hand, included offenses should be submitted

if (1) there is any evidence of their commission; (2) if, under the evidence, "the jury might believe the defendant guilty" thereof (State v. Mitchell, 68 Iowa 116, State v. Atherton, 50 Iowa 189, State v. Trusty, 118 Iowa 498, at 500); (3) if there be some evidence from which a jury may believe the included offense only was committed (State v. Vinsant, 49 Iowa 241, at 244, State v. Woodworth, 168 Iowa 263, State v. Perkins, 171 Iowa 1, at 2).'

"Conceding but not holding that the included offense of larceny should not have been submitted, the error, if any, was not prejudicial to the appellant.

"In the case of State v. Haugh, 156 Iowa 639, 640, 137 N.W. 917, we made this pertinent statement:

" 'We have never held that it constitutes prejudicial error to instruct with reference to an included crime, even though under the evidence a conviction for the crime charged, without an instruction as to the included crime, would have been sustained. It does not lie in the mouth of the defendant to complain that he has been convicted of a lower degree of crime than that which the evidence tends to establish. It is not to be presumed from the fact that the jury failed to convict of rape that they did convict of an assault with intent to commit rape without finding from the evidence beyond a reasonable doubt that the defendant was guilty of that crime. If the jury exercised undue leniency in their finding as to the degree of the crime committed, such error has resulted to defendant's benefit, and he cannot complain. It is enough to say that, so far as the general sufficiency of the evidence is concerned, the verdict is not without ample support.' "

See also State v. Kramer, 252 Iowa 916, 920, 921, 109 N.W.2d 18.

XI. Not argued separately but injected into the argument on included offenses are post conviction affidavits. One juror attempts to impeach the verdict and says she was confused, misled and is regretful. She feels that the verdict was a compromise. Nine jurors by affidavit deny any confusion, misunderstanding or mistake in arriving at their verdict. They comment

on the fairness of the trial and the fairness and freedom from bias of the trial court.

Affidavits from seven regular or part-time members of the audience accuse the court of bias against the defendant. Affidavits from an alternate juror and nine others from the audience commend the fairness of the court.

Nothing appears that would justify interference by us. Curiosity, drama and audience partisanship usually present in the trial of a publicized felony case do appear but the case is not one for decision by affidavit, popular clamor or audience participation. It was in the trial court for decision by a jury under well established rules and laws. The jury after careful consideration rendered its verdict.

A verdict cannot be impeached or avoided in the manner attempted by affidavits of jurors that they misunderstood the instructions. The question of what influenced the verdict is a matter of opinion which inheres in the verdict itself. This question is carefully considered, definitely decided and authorities cited in State v. Hill, 239 Iowa 675, 683, 684, 32 N.W.2d 398.

XII. This case was tried before a carefully selected and impartial jury and a trial judge with years of experience. The charge was defended with vigor and intensity by experienced and resourceful counsel. All available defensive tactics were employed.

We repeat what we said in Division I. It is not for us to pass upon issuable questions of fact properly submitted to the jury.

The jury has spoken.

We have reviewed the record and find no reversible error. The case is—Affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON and STUART, JJ., concur.

THORNTON, HAYS and LARSON, JJ., dissent.

MOORE, J., takes no part.

THORNTON, J. (dissenting)—Finding that I am unable to

agree with Division V of the majority opinion, I respectfully dissent.

My point of dissent is that Instruction No. 14, set out in full in the majority opinion, places the burden of proof of a defensive fact on the defendant, thus depriving the defendant of the presumption of innocence and relieves the State of the burden of proving the offense charged beyond a reasonable doubt; and that the instruction is confusing and inconsistent.

The last time this court examined this question was in 1881 in State v. Hamilton, 57 Iowa 596, 11 N.W. 5. The instruction under consideration was approved by a three to two decision in these words at page 598 of 57 Iowa, page 6 of 11 N.W.:

"The court instructed the jury that the burden of proof was on the defendant to establish the fact that he was not present, by a preponderance of evidence. This instruction was correct and is now the settled law of the State. State v. Vincent, 24 Iowa, 570; State v. Hardin & Henry, 46 Id., 623; State v. Red, 53 Id., 69; State v. Kline, 54 Id., 183; State v. Northrup, 48 Iowa, 583."

In State v. Hamilton, supra, at page 599 of 57 Iowa, page 6 of 11 N.W., Justice Adams wrote a dissent in which Justice Day concurred. He pointed out the burden to prove the defendant guilty was statutory (then section 4428, now section 785.3, Code of Iowa, 1962); that the instruction, as approved, relieves the State of this burden, and that it is inconsistent. In part, he said, at pages 599, 600 of 57 Iowa, pages 6, 7 of 11 N.W.:

" 'In my opinion, if the evidence introduced to show that the defendant was at another place when the robbery was committed, was such as to raise a reasonable doubt of his guilt, the jury would have been justified in acquitting. Code, § 4428. Now it is manifest that such doubt might be raised by evidence which could not be said to preponderate over the evidence leading to a different conclusion. This court has never undertaken to abrogate the rule that a reasonable doubt of guilt justifies an acquittal. It has, indeed, recognized this rule in the very cases relied upon by the majority as holding that when the defendant relies upon proving an *alibi* he must prove it by a

preponderance of evidence. Both rules cannot be correct because they are inconsistent with each other. No jury can follow both. Let us suppose a case where the evidence of an *alibi* does not preponderate, but does raise a reasonable doubt of guilt. What shall a jury do? If they follow the instruction that the evidence of an *alibi* must preponderate they must convict and disobey the instruction as to reasonable doubt. On the other hand, if they follow the instruction as to reasonable doubt they must acquit and disobey the instruction as to the evidence of an *alibi.* * * *

." 'But the rule adopted as to *alibi* appears to me to be wrong for another and still more cogent reason. In a civil action it is sufficient for the defendant to establish his defense by evidence which *balances* that of the plaintiff. According to the rule in question adopted by the majority, the defendant in a criminal action must prove his innocence by evidence which *overbalances* the evidence introduced to prove his guilt if the evidence of his innocence simply is that he was where he could not have committed the crime. The adoption of the rule in question requires a modification of the rule as to the presumption of innocence. The true doctrine under such rule would seem to be that the evidence of guilt is aided by a presumption of guilt, if the evidence of innocence relied upon is the evidence of an *alibi.*

" 'The majority, it appears to me, have been misled by reason of the fact that there is generally a well grounded suspicion attached to evidence of an *alibi*. It often comes from such sources that it should be greatly distrusted. The most direct and positive testimony may often very properly be regarded as entitled to but little if any weight. But to the extent that it does have weight, it should have the same effect which any other evidence of equal weight has. If it has weight enough to balance the evidence of guilt it should certainly be sufficient. And I think it should be sufficient if it raises a reasonable doubt.' "

The view expressed by Justice Adams in the Hamilton case has now become the majority view in this country. The defend-

ant cites cases from 32 states[1], the Federal Courts[2], and text writers[3] as supporting this view. The State does not contend the instruction given is other than a minority view.

An examination of the cases relied on by the majority opinion in the Hamilton case reveals, I believe, the mistaken view taken by this court.

In State v. Vincent, 24 Iowa 570, 578, 95 Am. Dec. 753, it is said:

"The *alibi* of the prisoner, and the existence in life of Claiborn Showers [the deceased] at the time of the alleged murder, are each independent propositions totally inconsistent with the guilt of the prisoner. It is evident the burden of proof of each rests upon the prisoner, for neither, against *prima facie* evidence of its corresponding inconsistent proposition of the prosecution, will be presumed. These defenses, then, must be sustained by the prisoner, and the evidence necessary to sustain either of them must be sufficient to outweigh the proof tending to establish its contradictory hypothesis." No authorities are cited.

It cannot be denied the alibi is inconsistent with guilt, but

Footnote 1. Ragland v. State, 238 Ala. 587, 192 So. 498; Schultz v. Territory, 5 Ariz. 239, 52 P. 352; People v. Hoosier, 24 Cal. App. 746, 142 P. 514; People v. Gist, 28 Cal. App.2d 287, 82 P.2d 501; McNamara v. People, 24 Colo. 61, 48 P. 541; State v. Horwitz, 108 Conn. 53, 142 A. 470; State v. Cianflone, 98 Conn. 454, 120 A. 347; Smith v. State, 4 Ga. App. 807, 61 S.E. 737; State v. Ward, 31 Idaho 419, 173 P. 497; State v. Woolworth, 148 Kan. 180, 81 P.2d 43; State v. Wright, 138 Kan. 31, 23 P.2d 475; Parsley v. Commonwealth, 321 S.W.2d 259 (Ky.); State v. Ardoin, 49 La. Ann. 1145, 22 So. 620, 62 Am. St. Rep. 678; State v. Molay, 174 La. 63, 139 So. 759; People v. Crofoot, 254 Mich. 167, 235 N.W. 883; People v. Marvill, 236 Mich. 595, 211 N.W. 23; State v. Stiel, 157 Minn. 461, 196 N.W. 490; State v. Armstead, 283 S.W.2d 577 (Mo.); State v. Taylor, 118 Mo. 153, 24 S.W. 449; State v. McClellan, 23 Mont. 532, 59 P. 924, 75 Am. St. Rep. 558; Hall v. State, 135 Neb. 188, 280 N.W. 847, 118 A. L. R. 1300; Peyton v. State, 54 Neb. 188, 74 N.W. 597; State v. Mucci, 25 N. J. 423, 136 A.2d 761; State v. Smith, 21 N. M. 173, 153 P. 256; Territory of New Mexico v. Tais, 14 N. M. 399, 94 P. 947; People v. Tapia, 11 App. Div. 2d 679, 201 N. Y. S.2d 984; People v. Russell, 266 N. Y. 147, 194 N.E. 65; State v. Foye, 254 N. C. 704, 120 S.E.2d 169; State v. Sheffield, 206 N. C. 374, 174 S.E. 105; State v. Nelson, 17 N. D. 13, 114 N.W. 478; Stevens v. State, 26 Ohio App. 53, 159 N.E. 834; Shoemaker v. Territory, 4 Okla. 118, 43 P. 1059; State v. Milosevich, 119 Ore. 404, 249 P. 625; State v. Mayfield, 235 S. C. 11, 109 S.E.2d 716; State v. McGhee, 137 S. C. 256, 135 S.E. 59; State v. Chancey, 136 S. C. 305, 132 S.E. 824; Odeneal v. State, 128 Tenn. 60, 157 S.W. 419; Nichols v. State, 91 Tex. Cr. Rep. 277, 238 S.W. 232; Ayres v. State, 21 Tex. App. 399, 17 S.W. 253; State v. Whitely, 100 Utah 14, 110 P.2d 337; State v. Parsons, 90 W. Va. 307, 110 S.E. 698; Fraccaro v. State, 189 Wis. 428, 207 N.W. 687; and Roen v. State, 182 Wis. 515, 196 N.W. 825.

Footnote 2. Goldsby v. United States, 160 U. S. 70, 16 S. Ct. 216, 40 L. Ed. 343; United States v. Vigorito, 67 F.2d 329 (2d Cir. 1933), certiorari denied, 290 U. S. 705, 54 S. Ct. 373, 78 L. Ed. 606; Falgout v. United States, 279 F. 513; McCool v. United States, 263 F. 55; Fielder v. United States, 227 F. 832; and Glover v. United States, 147 F. 426.

Footnote 3. 15 Am. Jur., Criminal Law, section 315; 20 Am. Jur., Evidence, section 154; 53 Am. Jur., Trials, section 657; Annotation, 124 A. L. R. 471; Annotation, 67 A. L. R. 138; Annotation, 29 A. L. R. 1127; 22 C. J. S., Criminal Law, section 40, page 130; and 22A C. J. S., Criminal Law, section 574, page 320.

it is not an independent proposition. (I do not find the term "affirmative defense" used until 1927 in State v. McCumber, 202 Iowa 1382, 212 N.W. 137.) Where, as here, it is necessary for the State to prove the defendant present to commit the crime, the evidence for the State is, the defendant was present at the time and place in question. Defendant's evidence of alibi is simply that he was not at the place in question but at another place, naming it, too remote for him to have been at the site of the crime. Defendant's evidence is purely defensive. The fact to be proved by the State is, defendant was there, any evidence that shows he was not there negates that evidence. The effect of the evidence is the same of that of a witness, actually present at the scene of the crime, who testifies, "I did not see the defendant there at the time. I immediately drove a mile down the road and saw the defendant working in a field." Certainly the first sentence of the witness' testimony is not an independent proposition or an affirmative defense. The same should be true of the second, it merely explains and confirms the first.

The second sentence quoted above from State v. Vincent, supra, is a combination of inconsistency and non sequitur. Why is it evident the burden of proof of alibi rests on the prisoner? On all other matters it is on the State. From the quoted sentence we find this answer, it will not be presumed the defendant was not present when the State has offered evidence that he was. From this the opinion holds the defendant has the burden of proof. When the opinion (and the instruction in the case at bar) states the nonpresence of the defendant will not be presumed, the presumption of innocence has been denied him, and the State has been relieved of proving its case beyond a reasonable doubt. The defendant in the Vincent case and this one had to be present to commit the crime as charged.

In State v. Hardin and Henry, 46 Iowa 623, 26 Am. Rep. 174, is the following quotation from Commonwealth v. Webster, 5 Cushing 295, 324, 52 Am. Dec. 711, 734 (Mass. 1850):

" 'In the ordinary case of an *alibi*, when a party charged with a crime attempts to prove that he was in another place at the time, all the evidence tending to prove that he committed the offense tends in the same degree to prove that he was at the

place when it was committed. If, therefore, the proof of the *alibi* does not outweigh the proof that he was at the place when the offense was committed, it is not sufficient.' "

The opinion then states this doctrine was simply recognized and approved in State v. Vincent, 24 Iowa 570. In the Webster case, supra, alibi is called an affirmative fact.

It should be noted in the opinion in State v. Hardin and Henry, supra, Justice Day pointed out the true rule at page 629 of 46 Iowa, as follows:

"For, if a reasonable doubt be created of the presence of the accused at the time and place of the commission of an offense which he could not commit when absent, a reasonable doubt is raised as to his guilt; and a reasonable doubt of guilt, all the authorities hold, entitles the accused to an acquittal."

In State v. Northrup, 48 Iowa 583, 587, 30 Am. Rep. 408, we said:

"The jury were instructed that to maintain the defense of *alibi* the burden was on the defendants, but that they were only required to prove it by a preponderance of the evidence. This is in accord with *The State v. Vincent*, 24 Iowa, 570.

"It is said there is a want of unanimity in the authorities on this question, and there are differences among the members of the court in relation thereto. *The State v. Hardin et al.*, 46 Iowa, 623. But a majority of the court adhere to the rulings heretofore made, under the belief that the decided weight of authority is in accord therewith."

In State v. Red, 53 Iowa 69, 70, 71, 4 N.W. 831, this court again cites the Vincent, Hardin and Northrup cases in approval of placing the burden of proof of alibi on the defendant. At page 71 of 53 Iowa is a paragraph attempting to justify the instruction in that it does not abrogate the doctrine of reasonable doubt. No attempt is made to explain the inconsistency pointed out by Justice Adams in his dissent in the Hamilton case.

To the same effect is State v. Kline, 54 Iowa 183, 185, 186, 6 N.W. 184.

The cases above examined are the entire basis for the five-line rejection of the views of Justice Adams in the Hamilton

case. It is submitted that the majority view was based on, 1, the thought this was the majority view, State v. Northrup, 48 Iowa 583, 587, 30 Am. Rep. 408; 2, that alibi was an independent or affirmative defense; 3, that so long as the instructions contained the statement the defendant's guilt must be proved beyond a reasonable doubt and if a reasonable doubt arises from all the evidence or a lack thereof he is entitled to an acquittal, no harm is done; and 4, because an alibi might be fabricated with ease, whether the type of evidence warranted such assumption or not, it should be guarded at all cost.

Since the Hamilton case I do not find a case where we have re-examined the alibi instruction. See discussion in State v. Wagner, 207 Iowa 224, 227–232, 222 N.W. 407, 61 A. L. R. 882, bearing on whether the evidence raised the defense of alibi. At page 229 of 207 Iowa it is pointed out the defendant may prove "affirmatively" it was impossible that he could have been present and when he does the burden is on him, citing the same authorities as in State v. Hamilton, supra.

In State v. McCumber, 202 Iowa 1382, 1384, 212 N.W. 137, alibi is called an affirmative defense. The opinion did not deal with this instruction but the right of the State to use rebuttal testimony.

In State v. Johnson, 221 Iowa 8, 20, 264 N.W. 596, we find the instruction is approved, alibi is called an affirmative defense, and the non sequitur, that the instructions did not go as far as such rightfully may go in that a cautionary instruction was not given.

In State v. Dunne, 234 Iowa 1185, 1191, 15 N.W.2d 296, 299, 300, we approved a similar instruction in these words:

"Instruction 11 told the jury that defendant claimed an alibi. In language which has been approved, the instruction states that courts recognize the defense as one that can be easily manufactured; evidence in support thereof should be scanned with caution; the burden to prove the defense by a preponderance of evidence rests upon defendant, but that if, upon the whole case, including the evidence on the question of alibi, there was a reasonable doubt as to guilt, there should be an acquittal. See State v. Johnson, 221 Iowa 8, 20, 264 N.W. 596, 267 N.W.

91, and cases cited; State v. Wagner, 207 Iowa 224, 230, 222 N.W. 407, 61 A. L. R. 882; 23 C. J. S. 764, section 1206; annotations 67 A. L. R. 122, 126; 124 A. L. R. 471."

In State v. Rourick, 245 Iowa 319, 323, 60 N.W.2d 529, 531, dealing with the admissibility of evidence where notice of alibi testimony is not properly given, section 777.18, Code of Iowa, 1950, we find these statements:

"We start with the proposition that alibi is essentially an affirmative defense. * * * Whether technically so classifiable we need not determine here. * * * the notice required by section 777.18 is in the nature of a special plea in that it is required before the special issue or defense of alibi can be raised."

In State v. Baker, 246 Iowa 215, 228, 66 N.W.2d 303, 310, in discussing the necessity for an instruction in the absence of a request on the claimed defense the shooting was accidental, we said:

"* * * Strictly speaking, the claim of alibi is not a defense, since, in the prosecution of many crimes and particularly those of violence, the burden is on the State to establish the presence of the accused at the place of the crime at the precise time it was perpetrated, but this court for many years and by many decisions has held that in a defense of alibi, in the sense of being at a place so distant that participation in the crime was impossible, the burden is on the accused to establish such so-called defense by a preponderance of the evidence." (Citing cases)

In the two cases cited last above this court recognizes that evidence of alibi is not an affirmative defense. The notice of alibi testimony required by section 777.18, Code of Iowa, 1962, does not create a new defense or a new plea. In the Rourick case Justice Smith states, "* * * the notice * * * is in the nature of a special plea in that it is required before the special issue or defense of alibi can be raised." He was more than hesitant to call evidence of alibi an affirmative defense.

I have carefully examined the majority opinion to find a basis or reason for the statement, "The issue of alibi is an affirmative defense * * *." None is given, in fact State v. Rourick, supra, is cited in support of it.

The defendant does not confess and avoid the commission of the offense charged by offering evidence of his absence from the scene of the crime and explaining the absence by showing where he was and what he was doing at that time. It does not amount to admitting a crime was committed by someone, but merely denies that he committed the crime. Under his plea of not guilty defendant is entitled to offer any evidence that denies the charge made. When he shows he was not there he does just that.

That the instruction is inconsistent is well pointed out by Justice Adams in the Hamilton case at page 599 of 57 Iowa, page 6 of 11 N.W., in these words:

"No jury can follow both. Let us suppose a case where the evidence of an *alibi* does not preponderate, but does raise a reasonable doubt of guilt. What shall a jury do? If they follow the instruction that the evidence of an *alibi* must preponderate they must convict and disobey the instruction as to reasonable doubt. On the other hand, if they follow the instruction as to reasonable doubt they must acquit and disobey the instruction as to the evidence of an *alibi.* * * *."

If the fact, evidence of an alibi may be readily manufactured, was ever a reason for placing the burden of proving alibi by a preponderance of the evidence on the defendant, that reason has now ceased to exist. Section 777.18, Code of Iowa, 1962, adopted by the Forty-ninth General Assembly in 1941, requires the defendant to file a written notice of his purpose to introduce alibi testimony, not later than four days before trial, setting forth the name, address and occupation of the witnesses he expects to call, and a statement of the substance of what he expects to prove by each witness. The purpose of the Act, chapter 314, Forty-ninth General Assembly, is, "AN ACT to provide for advance notice of the defenses of insanity or alibi in criminal cases."

Compliance with section 777.18 gives the State an ample opportunity to investigate manufactured alibi testimony. The majority opinion concedes this.

The belief expressed in State v. Hamilton, 57 Iowa 596, 598, 11 N.W. 5, 6, and State v. Northrup, 48 Iowa 583, 587,

30 Am. Rep. 408, that the decided weight of authority was in accord with the view expressed is no longer true.

Defendant has cited cases from 32 states and the Federal Courts that sustain his position. It is unnecessary and impractical to quote from all of them. It is sufficient to illustrate the true rule to quote from four of the later cases.

In People v. Pearson, 19 Ill.2d 609, 614, 169 N.E.2d 252, 255, Justice Schaefer says:

"Logically, proof of an alibi is not proof of an affirmative defense because in order to establish its case the prosecution must show that the defendant was present at the scene of the crime, and evidence that the defendant was elsewhere is only one method of negativing the prosecution's case. So where an instruction has unequivocally placed upon a defendant the burden of establishing an alibi, the conviction has been reversed. Hoge v. People, 117 Ill. 35, 44 [6 N.E. 796]; People v. Lacey, 339 Ill. 480, 488 [171 N.E. 544].

"To say that the burden is upon the defendant to establish an alibi can be accurate only if the term 'burden' is used in the sense of the requirement of going forward with evidence. But if that is all that is intended, any reference in an instruction to a burden upon the defendant is improper because it is never necessary or appropriate to mention to a jury the burden of going forward with the evidence. Quite apart from the matter of instructions to the jury, to think or speak of alibi in terms of an affirmative defense can only cause confusion. The ease with which alibi testimony can be fabricated, and its obvious capacity to surprise, may make appropriate some advance notice of the defense, but that is a different matter."

Commonwealth v. Bonomo, 396 Pa. 222, 231, 151 A.2d 441, 446:

"* * * There is no point in saying to a jury that the defendant must satisfy their minds of his innocence followed by a statement that he does not have to satisfy their minds but need only cause them to pause or hesitate as to his guilt. * * * The Commonwealth has the burden of proving every essential element necessary for conviction. If the defendant traverses one of those essential elements by evidence of alibi, his evidence

will be considered by the jury along with all the other evidence. It may, either standing alone or together with other evidence, be sufficient to leave in the minds of the jury a reasonable doubt which, without it, might not otherwise exist."

Halko v. State, 175 A.2d 42, 49 (Del. 1961):

"But we think it clearly erroneous. It is bottomed upon the theory that an alibi is an 'affirmative defense', similar to self-defense or insanity or former jeopardy. This is incorrect. An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it; or, as in former jeopardy, to invoke a bar arising out of the facts *dehors* the record.

" 'The defense of alibi * * * is not, properly speaking, a defense within any accurate meaning of the word "defense" but is a mere fact shown in rebuttal of the evidence introduced by the State.' 1 Wharton's Criminal Law § 381.

"Since an alibi is only a denial of any connection with the crime, it must follow that if the proof adduced raises a reasonable doubt of defendant's guilt, either by itself or in conjunction with all other facts in the case, the defendant must be acquitted. 1 Wharton's Criminal Law, § 381, citing cases from nearly every state in the Union."

United States v. Barrasso, 267 F.2d 908, 910, 911 (3d Cir. 1959), quotes with approval the following from United States v. Marcus, 166 F.2d 497, 503, 504 (3d Cir. 1948):

" 'By the weight of authority it is held that the instructions on the presumption of innocence of the accused, and of the necessity of fastening every necessary element of the crime charged upon the accused beyond a reasonable doubt, are not enough in cases involving the necessary presence of the accused at a particular time and place, when the accused produces testimony that he was elsewhere at the time. If the accused request an instruction as to the burden of proof on his alibi, an instruction on the subject must be given so as to acquaint the jury with the law that the government's burden of proof covers the defense of alibi, as well as all other phases of the case.' "

In Wigmore's Code of Evidence (Third Ed.) the burden is stated this way:

"Art. 15. Criminal Acts. In all criminal issues as to the doing of the act charged,

"(1) the risk of jury-doubt is on the prosecution;

"(2) the duty of passing the judge does not shift to the defendant by any presumption of law; except as follows: * * *

"Par. (b). Alibi, as in Par. (c).

"Par. (c). Self-defense, on a charge of corporal violence; here the risk of jury-doubt remains on the prosecution, but the duty of passing the judge is on the defendant."

It seems clear the only duty on a defendant claiming alibi is to go forward with evidence to raise the issue. He has no burden of proof, that is on the State.

The view expressed by Justice Adams in the Hamilton case, 57 Iowa 596, 599, 11 N.W. 5, 6, is now the law in a majority of states as well as recognized by the text writers. No good reason appears why we should not change an erroneous view. Mark Twain is quoted as saying, "Loyalty to a petrified opinion never yet broke a chain or freed a human soul." This court certainly has no loyalty to a mistaken view, no matter how long such has stood. In fact, our opinions do not indicate we have actually considered the instructions in alibi cases with the matters now considered in mind since the Hamilton opinion.

The pride and strength of this court has been its willingness to examine the majority view on any subject of law and to adopt the same where sound. That should be done in this case.

I would reverse this case for a new trial so the trial court will have the opportunity to instruct the jury on the issue of alibi in conformity with the views expressed herein.

HAYS and LARSON, JJ., join in this dissent.